### DOWNINGTOWN AREA SCHOOL DISTRICT

v.

### INTERNATIONAL FIDELITY INSURANCE COMPANY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 1995.

Decided Jan. 30, 1996.

Bonnie B. Leadbetter, for Appellant.

Guy A. Donatelli, for Appellee.

Before DOYLE and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

The International Fidelity Insurance Company (IFIC) appeals from an amended order of the Court of Common Pleas of Chester County (trial court) denying IFIC's Motion for Partial Summary Judgment.[1]

On February 8, 1989, the Downingtown Area School District (Downingtown) entered into a structural steel contract (Contract) with Kern Structural Enterprises (Kern) for the construction of the Shamona Creek Ele-

1. The trial court issued its original order on February 1, 1995; however, on March 8, 1995, the trial court granted IFIC's motion to amend the interlocutory order to include language, prescribed by 42 Pa.C.S. § 702(a), which would allow for an immediate appeal. We subsequently granted IFIC's Petition for Permission to Appeal.

2. Act of December 20, 1967, P.L. 869, *as amended,* 8 P.S. §§ 191–202. Section 3 of the Bond Law provides in pertinent part:

(a) Before any contract exceeding five thousand dollars ($5,000) for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor:

(1) *A performance bond* at one hundred percent of the contract amount, *conditioned upon the faithful performance of the contract in accordance with the plans, specifications and*

mentary School Project (Project). Under the Contract, Kern agreed to provide labor, materials, equipment and services necessary for the Project, and was required to substantially complete its work by August 15, 1989. (R.R. at 10.) In the event that the work was not completed by this date, the Contract provided that Kern would be liable for liquidated damages for delay in addition to any other consequential losses that Downingtown might incur because of the delay. (Contract section 1.07, Modification of Article 8, Time, subparagraph 8.4.2; R.R. at 38.)

As contractor for the Project, Kern, pursuant to its obligation under the Contract and under the Public Works Contractors' Bond Law of 1967 (Bond Law),[2] furnished Downingtown with a Performance Bond provided by its surety, IFIC. The Performance Bond contained a statement incorporating by reference the Contract between Kern and Downingtown, (R.R. at 17).[3] Directly following this statement, the Performance Bond provided:

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

*conditions of the contract.* Such bond shall be solely *for the protection of the contracting party which awarded the contract.*

(2) *A payment bond* at one hundred percent of the contract amount. Such bond shall be solely *for the protection of claimants supplying labor and materials to the prime contractor* to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be *conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work.* "Labor or materials" shall include public utility services and reasonable rentals of equipment, but only for periods when the equipment rented is actually used at the site.

8 P.S. §§ 193(a)(1) and (2) (emphases added).

3. The Performance Bond stated simply, "WHEREAS, Contractor [Kern] has by written agreement dated February 8, 1989, entered into a contract with Owner [Downingtown] . . . which contract is by reference made a part hereof, and is hereinafter referred to as the Contract." (R.R. at 17.)

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

(1) Complete the Contract *in accordance with its terms and conditions,* or

(2) Obtain a bid or bids for completing the Contract *in accordance with its terms and conditions,* and ... arrange for a contract between [the lowest responsible] bidder and Owner, and make available as Work progresses ... sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, *including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof.* The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

(R.R. at 18) (emphasis added).

On May 23, 1989, Kern stopped work on the Project and notified Downingtown by letter that Kern was terminating the Contract. (R.R. at 22.) In response, Downingtown formally declared Kern in default and advised it that Downingtown would proceed against Kern's bonds and pursue other available legal remedies against Kern. (R.R. at 26.) In November 1991, Downingtown filed an action in the trial court against IFIC as a result of Kern's default. In its complaint,

Downingtown sought damages for the difference between the cost of the Contract with Kern and the eventual cost to complete the project with another contractor. In addition to these damages, Downingtown also sought delay damages, liquidated damages and attorney's fees.[4]

On February 28, 1994, IFIC filed a Motion for Partial Summary Judgment. While IFIC did not dispute its liability for the difference in contract price between Kern and the replacement contractor, it did dispute its liability for the additional damages claimed by Downingtown, asserting that these items were neither covered by the express language of the Performance Bond nor required by Bond Law.

The trial court denied IFIC's Motion for Partial Summary Judgment as well as a subsequent Motion for Reconsideration. The trial court agreed with IFIC that the only costs specified under the Performance Bond were for the completion of performance. However, while recognizing that the Performance Bond itself made no specific mention of delay damages, the trial court noted that the construction Contract, incorporated by reference into the Performance Bond, did contain provisions concerning responsibility for costs resulting from delay. The trial court then concluded that, because the law is not clear as to whether Downingtown may obtain delay damages from IFIC under these circumstances, IFIC was not entitled to summary judgment as a matter of law.

On appeal, we are again asked to consider whether Downingtown, as a matter of law, can recover delay damages, liquidated damages, and attorney's fees against IFIC under a Performance Bond issued pursuant to sec-

---

4. On July 17, 1989, Downingtown entered into a contract with F.S.S. Fisher Steel Corporation to complete a portion of Kern's contract obligations. The difference in price between the two contracts was $21,071.00. (R.R. at 3, 10–11.) Moreover, the other prime contractors on the Project alleged that Kern's default caused a Project delay, and several of these contractors filed claims against Downingtown for delay damages and other costs in excess of $315,976.28, which Downingtown has paid.

Accordingly, in Count I of its complaint, Downingtown requested (a) $21,071.00, representing the increase in price between the Kern

Contract and the Fisher contract; (b) an amount in excess of $315,976.28, representing the amount of delay claims made by other prime contractors on the Project; (c) liquidated damages under the Contract; (d) attorney fees, interests and costs; and (e) all other just relief. In Count II of its complaint, Downingtown requested a declaratory judgment that IFIC is responsible to Downingtown under the Performance Bond for any and all delay damage claims asserted by and paid to other contractors on the Project or arising out of the Kern default, including liquidated damages. (R.R. at 5–6.)

tion 3 of the Bond Law, 8 P.S. § 193(a)(1), where the Performance Bond does not provide specifically for such remedies, but does incorporate the terms and conditions of the Contract providing for those damages.

█ Initially, we note that our scope of review is limited to determining whether the trial court made an error of law or abused its discretion. *Salerno v. LaBarr,* 159 Pa. Cmwlth. 99, 632 A.2d 1002 (1993), *appeal denied,* 537 Pa. 655, 644 A.2d 740 (1994). Summary judgment should be granted only in those cases which are clear and free from doubt, and any doubt must be resolved in favor of the non-moving party. *Pennsylvania Protection & Advocacy, Inc. v. Department of Education,* 148 Pa.Cmwlth. 153, 609 A.2d 909 (1992). Moreover, summary judgment may be granted only where the moving party demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035(b). Here, there are no disputed fact issues.

█ In support of its Motion for Partial Summary Judgment, IFIC maintains that in determining the extent of liability of a surety under a public construction surety bond, one must look to the language of the bond itself,

*Salvino Steel and Iron Works, Inc. v. Fletcher & Sons, Inc.,* 398 Pa.Superior Ct. 86, 580 A.2d 853 (1990), *appeal granted,* 527 Pa. 625, 592 A.2d 45, *appeal dismissed as improvidently granted,* 529 Pa. 62, 601 A.2d 806 (1992), the general rule being that a surety assumes no obligations beyond those expressly enumerated in the bond. According to IFIC, because its Performance Bond does not specifically include provisions for IFIC to undertake the payment of delay damages, liquidated damages or attorney's fees, but covers only those costs related to the completion of performance, IFIC's liability under the Performance Bond extends only to the cost of Project completion. IFIC contends that caselaw supports this view.

First, IFIC cites several cases dealing with labor and material payment bonds issued pursuant to 8 P.S. § 193(a)(2), all of which held that a surety is not liable for consequential damages not specifically included in the express language of the bond. However, IFIC's reliance on this line of cases is misplaced because, in each instance, the court determined the scope of the payment bond involved based on the language of the bond *in conjunction with* the wording of 8 P.S. § 193(a)(2), the statute under which the payment bond was executed.[5] Because the stat-

5. For example, in *Lite–Air Products, Inc. v. Fidelity and Deposit Company of Maryland,* 437 F.Supp. 801 (E.D.Pa.1977), a subcontractor attempted to recover from the surety on a payment bond furnished by the general contractor, arguing that the surety had assumed obligations which were co-extensive with those of the general contractor. The court in *Lite–Air* rejected this argument. Noting that under the payment bond language, which was very similar to the statutory language regulating the matter, the surety was liable only for amounts due for "labor and materials," the court held that charges for lost profits, cancellation fees, and escalated material costs due to delay were not included in this category.

Similarly, in *W.S.A. Inc. v. Stratton,* 680 F.Supp. 375 (S.D.Fla.1988), the court examined the clear language of the payment bond and the statute regulating such bonds, both of which held the surety liable for only labor, materials and supplies. Because neither the statute nor the bond indicated an intent to hold the surety liable for more than this, the court dismissed a subcontractor's claim for additional costs due to the prime contractor's delay in performance of the contract.

Likewise, in *Can–Tex Industries v. Safeco Insurance Company of America,* 460 F.Supp. 1022

(W.D.Pa.1978), the court granted judgment on the pleadings in favor of the payment bond surety on a claim for finance charges and attorney's fees owed by the general contractor. The court determined that the bond conformed to state law in restricting the surety's obligations to payment of all money due any claimant supplying labor and materials on a public works project, and the payment bond could not be extended by language in a subcontract under which the general contractor agreed to be liable for finance charges and attorney's fees upon default. The court held that "[t]he law cannot impute an intent to cover such additions beyond the statutory requirements of the Payment Bond without express inclusion in the Bonding Agreement." *Id.* at 1025.

In *Salvino Steel and Iron Works, Inc. v. Fletcher & Sons, Inc.,* 398 Pa.Superior Ct. 86, 580 A.2d 853 (1990), *appeal granted,* 527 Pa. 625, 592 A.2d 45, *appeal dismissed as improvidently granted,* 529 Pa. 62, 601 A.2d 806 (1992), a subcontractor on a construction project sued the surety for damages incurred because of delays resulting from the principal contractor's default, arguing that these costs were contemplated under the subcontract. The trial court granted summary judgment to the surety, concluding that under the payment bond, the surety only guaranteed

ute governing payment bonds is extremely narrow, whereas the statute governing performance bonds is broad, payment bond cases are inapplicable here.

■ A payment bond, executed pursuant to 8 P.S. § 193(a)(2), protects those who have supplied labor and materials to the prime contractor on a public works project, guaranteeing payment of all material furnished or labor performed in the prosecution of the work. On the other hand, a performance bond is designed to protect the entity which awarded the contract by assuring faithful contract performance. To this end, a performance bond provides for one hundred percent of the contract amount, conditioned upon performance of the contract in accordance with its plans, specifications and conditions. The Performance Bond here was executed in conformity with these statutory requirements, obligating IFIC, as surety, to complete the Contract *in accordance with its terms and conditions.* Thus, the Performance Bond required IFIC to arrange for a new contract and "to pay the cost of completion less the balance of the contract price; but not exceeding, *including other costs and damages for which the Surety may be liable hereunder,* the amount [for Contract completion under its terms and conditions]." (R.R. at 18.) Because this is a Performance Bond which, unlike bonds issued pursuant to 8 P.S. § 193(a)(2), is not limited to liability for labor and materials, we must use cases interpreting 8 P.S. § 193(a)(1) to determine the scope of IFIC's liability under the Performance Bond.

■ IFIC asserts, however, that the Performance Bond's wording does not act to obligate it for Downingtown's all inclusive claims for damages. IFIC maintains that the courts have uniformly held that a surety can only be liable for those costs *specified* under the bond. According to IFIC, the only obligation it has specifically undertaken is for the completion of performance. Although we concede that the Performance Bond does not *specifically* enumerate the "other costs and damages" mentioned, we also recognize that to limit IFIC's obligation under the Performance Bond merely to the cost of completion would render the clause referring to these "other costs and damages" meaningless. Interpretation of a surety's liability under a bond should be undertaken with the purpose of constructing the intent from *all* of the words and clauses used and taken as a whole, with due regard to the surrounding circumstances. *Lite–Air Products, Inc. v. Fidelity and Deposit Company of Maryland,* 437 F.Supp. 801 (E.D.Pa.1977). Here, IFIC specifically guaranteed to pay for the cost of contract completion, but it appears that IFIC may have burdened itself with payment for other unspecified costs and damages as well.[6]

payment to the subcontractor for labor and materials and did not specifically undertake responsibility for delay damages. The court noted that the bond language substantially tracked the statutory language of 8 P.S. § 193(a)(2), and stated, "[w]here the bond is statutorily required and the bond's terms are framed in the language of the statute, the obligations to which the surety agreed are specifically stated in and limited by the bond and are those obligations required by the statute." *Id.* at 91, 580 A.2d at 856.

Finally, in *Reliance Universal, Inc. of Ohio v. Ernest Renda Contracting Co., Inc.,* 308 Pa.Superior Ct. 98, 454 A.2d 39 (1982), the court considered whether service and financing charges, agreed to as part of the underlying contract between the contractor and its supplier, were covered by a labor and materials payment bond. The court held that the surety did not obligate itself to pay these charges where the statute required and the executed bond obligated the surety to guarantee payment only for "labor and materials used or reasonably required for use in the performance of the contract." Holding that it is the language of the bond, rather than the agreement between the contractor and his supplier, which determines the surety's obligation, the court concluded that the surety did not agree to obligations beyond the statutory requirements.

6. In *Salvino,* the court noted that because the wording of 8 P.S. § 193(a)(2) is narrow, bonds drafted pursuant to this statute may be equally narrow. Based on this reasoning, the court, in *Salvino,* decided that where the surety followed the statutory language and guaranteed only the cost of labor and materials furnished in the performance of the contract, the surety was not responsible for other costs resulting from delay because that intent was not *specifically* set forth in the labor and material payment bond.

However, unlike the narrow statutory language of 8 P.S. § 193(a)(2), the wording of 8 P.S. § 193(a)(1) is extremely broad, covering faithful performance of the underlying contract in accordance with that contract's plans, specifications and conditions. Logically then, applying the rationale of *Salvino,* a performance bond drafted pursuant to this broad statute may be equally

However, IFIC contends that, even in performance bond cases, Pennsylvania case law has uniformly held that a surety is liable only for the obligations specifically guaranteed by the bond, and does not cover all collateral obligations undertaken by the bonded principal under its contract, even where that contract is incorporated by reference into the bond. To support this proposition, IFIC relies on *Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15 (1960), in which our Supreme Court, quoting *Commonwealth v. Fidelity & Deposit Co. of Maryland,* 355 Pa. 434, 50 A.2d 211 (1947), noted:

> A bond given pursuant to a contract incorporated in the bond, will be construed in the light of the terms of the contract and the attendant circumstances, but 'the obligation of a bond cannot be extended beyond the plain import of the words used'.... Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning....

> The compliance bonds in the instant case are conditioned on the contractor performing 'The terms and conditions of said contract, and his, their, or its obligations thereunder.' They do not contain any obligation to 'Satisfy all claims and demands incurred in and for the same, or growing out of the same.'...

*Mascaro,* 401 Pa. at 635, 166 A.2d at 17.

We believe that IFIC misconstrues *Mascaro.* That case involved a suit by a subcontractor, Mascaro, against a sub-subcontractor, Milonas, and its surety. The prime contractor, Bero Construction Company, had contracted with the Ohio Turnpike Commission to build part of the Ohio Turnpike. Bero subcontracted with Mascaro for part of the work, and Mascaro sub-subcontracted with Milonas to build certain concrete abutments and decks, agreeing that the work be done in accordance with Turnpike Commission plans and with the terms of the subcontract between Mascaro and Bero. Under

that subcontract, Mascaro was to give Bero a bond conditioned upon both faithful performance of the subcontract *and* payment of labor and material bills.

However, Milonas provided Mascaro only with a performance bond, to indemnify Mascaro against any loss or damage directly arising by reason of Milonas' failure to faithfully perform its sub-subcontract. When Milonas defaulted, Mascaro looked to Milonas' surety to pay the costs for labor and materials incurred by Milonas. The court sustained preliminary objections in the nature of a demurrer to this claim for payment of *labor and material* bills against the surety on a *performance* bond. The court noted that neither Milonas, in its sub-subcontract, nor Mascaro, in its subcontract, agreed to pay bills or claims contracted during the work; consequently, *because nothing in either contract brought labor and material bills and claims within the bond language,* "[a]ll that was guaranteed was the performance of the contract, that is, the building of the decks and abutments." 401 Pa. at 634, 166 A.2d at 16. In contrast, under the Performance Bond here, Downingtown seeks to recover for a condition which Kern had agreed to perform in the Contract with Downingtown, a Contract which is incorporated into the Performance Bond itself.

IFIC also maintains that the Performance Bond simply uses standard bond language when it incorporates the underlying Contract in a clause stating "WHEREAS [Kern] has entered into a contract with [Downingtown] ... which contract is by reference made a part hereof, and is hereinafter referred to as the Contract." IFIC contends that incorporation of the Contract in this manner serves only to define Kern's obligations, so that it can be determined whether a default has occurred to trigger the obligations of the surety as defined by the terms of the Performance Bond. IFIC asserts that it is the provision beginning "NOW, THEREFORE," which sets out the surety's rights and duties in detail, and that this provision does not obligate IFIC to satisfy all claims and de-

---

broad. Thus, we can reasonably conclude that, although a payment bond limits the surety's liability to costs for labor and materials, unless other costs are *specifically* mentioned in the

bond, a performance bond extends a surety's obligation to costs covered in the underlying contract, even though expressed in the bond in general terms.

mands against Kern or arising out of the Kern/Downingtown Contract; rather, any collateral obligations undertaken by Kern in the Contract are imposed on the surety only when specified by the bond.

We agree that the WHEREAS clause incorporating the Contract into the Performance Bond only sets out the condition of IFIC's liability rather than the scope of that liability. However, as discussed previously, we disagree that the language in the Performance Bond which does determine the scope of IFIC's liability, necessarily limits that liability solely to payment for Project completion. Indeed, the operative language of the Performance Bond closely tracks the statutory language of 8 P.S. § 193(a)(1), under which it was executed. After examining the language of the applicable statute and the wording of the Performance Bond itself, we conclude that the terms of the Performance Bond may be sufficiently broad to extend coverage to damages beyond the price differential between Kern's Contract and the cost of completion with a different contractor.

Because doubt remains as to whether such damages are unrecoverable under the Performance Bond, we cannot conclude that IFIC is entitled to judgment as a matter of law. Accordingly, we affirm the trial court's denial of IFIC's Motion for Partial Summary Judgment and remand the case for proceedings in accordance with this opinion.

### ORDER

AND NOW, this 30th day of January, 1996, the order of the Court of Common Pleas of Chester County, dated February 1, 1995, is hereby affirmed and we remand the case for proceedings in accordance with this opinion.

Jurisdiction relinquished.