**BELLEFONTE AREA SCHOOL DISTRICT**

v.

**Tracey S. DEAK, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 4, 2001.
Decided July 6, 2001.

Joseph P. Green, Bellefonte, for appellant.

Scott C. Etter, State College, for appellee.

Before FRIEDMAN, FLAHERTY, Judges, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Senior Judge.

Tracey S. Deak appeals from the order of the Court of Common Pleas of Centre County (trial court) that granted the motion for summary judgment filed by Bellefonte Area School District (School District) and entered judgment in favor of the School District and against Deak in the amount of $15,164.94. We vacate and remand.

Deak was a special education teacher for sixth, seventh, and eighth graders at the Bellefonte Middle School. On March 3, 1997, Deak requested and was granted sabbatical leave for the 1997–98 school year. The sabbatical was taken pursuant to several sources of authority: Sections 1166, 1166.1, and 1168 of the Public School Code of 1949 (School Code), Act of July 23, 1970, P.L. 563, *as amended,* 24 P.S. §§ 11–1166, 11–1166.1 [1], and 11–1168; Article 17 of the School District Collective Bargaining Agreement (CBA); and the School District Policy No. 438. Pursuant to the CBA, Deak was paid 50% of her salary during the sabbatical, or $19,141. She also purportedly received benefits worth $7,613.65 during this time, in the form of social security, Medicare, retirement, medical insurance, life insurance, income protection, workers' compensation, and other benefits.

Prior to her sabbatical, Deak taught in a "part-time" classroom.[2] Following her sabbatical, she was assigned as a "resource room" special education teacher for seventh grade students only. Prior to the sabbatical, Deak had a total of fifteen students, with no more than nine students in her classroom at one time. Following the sabbatical, she had a total of sixteen students (according to the trial court) or twenty students (according to Deak) with no more than nine students in the classroom at any one time. Part-time special education classrooms are purportedly for students who spend 50–85% of their time with the special education teacher, while students in resource rooms purportedly spend 50% or less of their time in a special education environment. Changes regarding the special education department at the middle school were purportedly being contemplated for a number of years, and Deak was purportedly privy to meetings and discussions concerning these changes both before and during her sabbatical. The trial court "found" that when she returned from sabbatical and received her classroom assignment, she did not believe

---

1. Section 1166.1 was added by Section 1 of the Act of July 9, 1992, P.L. 403.

2. "Part-time" in this context refers to the amount of time students spend in a classroom. It is not a characterization of Deak's working hours—she was a full-time employee of the School District.

it to be a problem, although it was apparent that she was assigned only to seventh grade special education students. Trial Court Opinion, p. 5. In her deposition, however, Deak indicated that she was unaware that she was being assigned to a resource classroom and that she was unprepared for it. Deak Deposition, pp. 31–32.

Deak believed that she was assigned a different position than the one she had prior to the sabbatical, one that apparently did not work out too well for her. She described the problem in her deposition as follows: "The minute school started and my students started arriving and I realized that there were too many of them and I was trying to work my program as a part-time program and there were so many students and it wasn't working. It was very difficult." *Id.* at 32. It purportedly became so difficult that Deak resigned her job with the School District effective January 7, 1999, less than a full school year after her sabbatical.

 Pursuant to Section 1168 of the School Code, a teacher who fails to complete at least one school term following a sabbatical is liable for a pro-rata share of all benefits received during the sabbatical. The teacher, however, must be returned to the "same position" following the sabbatical for such liability to apply. *See Dinberg v. Oil City Area School District,* 52 Pa. Cmwlth. 449, 416 A.2d 1139 (1980). Deak was apparently aware of this condition and aware that the School District would pursue the matter. Following Deak's resignation, the School District requested that Deak repay sums in the amount of $15,164.94. She refused, and the School District filed a complaint against her in the trial court. Both sides filed motions for summary judgment based upon the depositions and affidavits of Deak and the School District's Director of Special Education. The trial court, in an opinion that appears

to have "found" facts that were not agreed upon, dismissed Deak's motion and granted that of the School District, concluding that Deak was returned to the "same position" for purposes of Section 1168. This appeal followed.

 Our scope of review of a trial court order granting summary judgment is whether the trial court erred or abused its discretion. *Downingtown Area School District v. International Fidelity Insurance Co.,* 671 A.2d 782 (Pa.Cmwlth.1996). Summary judgment may be granted only when the moving party demonstrates that there are no genuine issues of material fact and the moving party is entitled to favorable judgment as a matter of law. *Id.* Summary judgment is granted only in cases that are clear and free from doubt, with any doubt being resolved in favor of the non-moving party. *Id.* The record must be reviewed in a light most favorable to the non-moving party. *Zablow v. Board of Education of the School District of Pittsburgh,* 729 A.2d 124 (Pa.Cmwlth. 1999). Moreover, in reviewing a motion for summary judgment, it is not the court's function to decide facts, but to determine whether there are issues of fact to be tried. *Ruszin v. Department of Labor & Industry, Bureau of Workers' Compensation,* 675 A.2d 366 (Pa.Cmwlth.1996).

Deak argues that the trial court erred by granting summary judgment in favor of the School District on (1) the issue of liability when the record demonstrates either that the School District returned Deak to a different position following her sabbatical or that issues of material fact still exist regarding this matter, and (2) the issue of damages when Deak disputes the School District's calculations.

Section 1168 provides:

(a) No leave of absence shall be granted unless such [public school employee] shall agree to return to his or her

employment with the school district for a period of not less than one school term immediately following such leave of absence.

(b) No such leave of absence shall be considered a termination or breach of the contract of employment, and the person on leave of absence shall be returned to the same position in the same school or schools he or she occupied prior thereto.

(c) If the employe fails to return to employment unless prevented by illness or physical disability, the employe shall forfeit all benefits to which said employe would have been entitled under the provisions of this act for the period of the leave.

(d) If such employe resigns or fails to return to his employment, the amount contributed by the school district under section 1170 of this act to the Public School Employes' Retirement Fund shall be deducted from the refund payable to such employe under existing law and the amount so deducted shall be refunded to the school district by which it was paid.

24 P.S. § 11–1168.

■ Apparently only one appellate court case has addressed the issue of what may constitute the "same position" as contemplated by Section 1168. In *Dinberg*, a music teacher who prior to sabbatical leave taught elementary and junior high school students was returned to a position teaching music to only elementary school students. We determined that this was the "same position," in contrast to the dissenting opinion that the teacher's position had changed because he was not returned to a position that also taught junior high students. We concluded very simply that, "teaching elementary students is the same as teaching elementary students." *Id.* at 1141. The "same position" under Section 1168 therefore need not be the "identical position" held before the sabbatical leave.

In arguing that her post-sabbatical position was different than her pre-sabbatical position, Deak sets forth the following alleged differences, which she had set forth in her affidavit to her summary judgment motion:

| OLD POSITION | | NEW POSITION |
|---|---|---|
| 6th, 7th & 8th graders | v. | 7th graders only |
| 11 to 15 year old students | v. | 12 or 13 year old students |
| Students grouped by ability | v. | Students grouped by age |
| 2nd to 4th grade reading levels | v. | 2nd to 12th grade reading levels |
| 3–year revolving curriculum | v. | New curriculum to be developed to parallel 7th grade Regular Education |
| Never taught World Cultures | v. | Studied, then taught World Cultures |
| Separation of behavior conflicts | v. | Most 7th graders grouped |
| Part-time classroom | v. | Resource classroom |
| 15 students maximum | v. | 20 students maximum |
| Maximum 85% of time in Special Education | v. | Maximum 50% of time in Special Education |
| More teaching of students | v. | Meeting with BEST staff |
| Two tutorial periods per day | v. | One tutorial & one teachers' meeting per day |

In arriving at its conclusion that the two positions were the same for purposes of Section 1168, the trial court did not address these twelve alleged differences, but simply determined that the two positions were close enough pursuant to *Dinberg*. The School District addresses each of

Deak's alleged differences in its brief before this Court, but in so doing crafts its argument as if it is before the fact finder. The School District argues that Deak's alleged differences are "irrelevant, exaggerated, and unsupported by the facts." School District's Brief, p. 12. It generally fleshes out this argument not by referencing any "facts" agreed upon by the two parties, but by arguing certain points from the two depositions and making references to exhibits introduced by the School District and attached to the depositions. Nowhere are these exhibits formally accepted by Deak as "fact" of all matters contained therein.

■ When we review the alleged differences between the two positions as articulated by Deak, two things instantly emerge. First several of the differences do appear to be inconsequential in accordance with *Dinberg,* namely the fact that Deak was assigned to teach only 7th graders when she previously taught 6th, 7th, and 8th graders.[3] To paraphrase *Dinberg,* teaching 7th graders is the same as teaching 7th graders. On several of the other alleged differences, however, we are not prepared, based upon the existing record, to unhesitatingly determine that they are so insignificant that the School District is entitled to judgment as a matter of law. Our hesitation is prompted in large part because we are involved here with the education of special education children, whose specific needs have led to the promulgation of two chapters of the Department of Education's regulations. *See* 22 Pa.Code Chapters 14 and 342. We cannot

simply conclude that "teaching special education students is the same as teaching special education students" when there are, apparently, different teaching protocols involved and different degrees of student need and/or ability involved.

The "facts" of record do not sufficiently describe the practical import to a special education teacher of a part-time classroom as contrasted with a resource classroom[4], the addition of five more special education students per year, or the significance to a teacher in Deak's position of having to teach students on a 2nd to 12th grade level when she had been teaching those on a 2nd to 4th grade level. Indeed, the School District disputes Deak's allegations that she was assigned a student or students with a 12th grade reading level, although they appear to admit that she was assigned a student or students with a 9th grade reading level. The School District also disputes Deak's assertion that she was assigned up to 20 students in the new position, although one of their own exhibits appears to support this assertion.

All of this leads to the conclusion that entry of summary judgment for either party is inappropriate. There are clearly outstanding issues of fact, and the record does not establish, with clarity and without doubt, that the School District is entitled at this stage to judgment as a matter of law. We make no determination regarding the alleged differences between Deak's previous and new positions. The differences as a whole may indeed be of such a character that it should be determined that

---

**3.** Also, the argument that her new position requires her to teach 12 or 13 year olds when she previously taught 11 to 15 year olds is *simply a restatement that her new position* requires her to teach 7th graders when she previously taught 6th, 7th, and 8th graders.

**4.** Although 22 Pa.Code § 342.42 provides some description concerning the differences

of resource and part-time classrooms, it does so in general terms and does not provide a sufficient foundation for a determination that, in this particular circumstance, Deak's part-time and resource room placements are essentially the "same" position for purposes of Section 1168.

Deak was returned to a different position for purposes of Section 11–1168 or, as the School District argues, they may indeed be "irrelevant, exaggerated, and unsupported by the facts." This is a matter for a fact finder to determine following an appropriate hearing, as the parties clearly do not agree upon the pertinent facts and their import. Moreover, what constitutes the "factual" record in this case is essentially the deposition testimony of two witnesses whose testimony is subject to credibility determinations by the fact finder. Therefore, a sufficient basis for summary judgment had not been established. *Ack v. Carroll Township Authority*, 661 A.2d 514 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 543 Pa. 731, 673 A.2d 336 (1995).

Similarly, issues of material fact appear concerning the matter of damages. Although Deak does not dispute the amount of base salary paid to her during her sabbatical, she does dispute the School District's allegations that it suffered the losses it claimed concerning her fringe benefits. Deak argues that if the School District recoups the salary paid to Deak during the sabbatical year, it will be able to file refunds for Social Security, Medicare, and other contributions. Further, Section 1168(d) of the School Code provides for the School District's recouping of pension contributions. The trial court did not resolve these issues concerning the School District's actual damages; rather, it accepted the School District's figures and entered judgment accordingly.

The several doubts that exist concerning the School District's right to the judgment entered by the trial court establish that such judgment is premature. The trial court accordingly erred by entering summary judgment for the School District on the issues of liability and damages. The order of the trial court is therefore vacated, and this matter is remanded to the trial court for further proceedings.

### ORDER

AND NOW, this 6th day of July, 2001, the order of the Court of Common Pleas of Centre County (trial court) in the above-captioned matter is hereby vacated, and this matter is remanded to the trial court for further proceedings.

Jurisdiction relinquished.