Latif Wheeler GOVAN

v.

PHILADELPHIA HOUSING AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2004.

Decided April 27, 2004.

---

Stephanie Pompey, Philadelphia, for appellant.

Daniel J. Zucker, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and COHN, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Philadelphia Housing Authority (PHA) appeals from the July 19, 2002 order of the Common Pleas Court of the First Judicial District (trial court) holding PHA liable in the amount of $50,000 for injuries sustained by Latif Wheeler Govan (Govan) as a result of a dog attack on PHA's premises. In doing so, the trial court held that an order entered earlier in the case by another judge was the law of the case with respect to PHA's sovereign immunity defense. We reverse the order of the trial court.

PHA owns and maintains Cambridge Plaza, a housing development, where Govan, who is three years old, resides with his parents, Carolyn Wheeler and Warren Govan. PHA has adopted a policy for keeping pets on the premises,[1] and it gives PHA the authority to impound an animal or to evict a tenant who does not comply

---

1. The pet policy provides in pertinent part,

   The [PHA] requires the owners of a cat or a dog permitted under this policy to:
   1. Register the pet annually with the Housing Manager and complete the Pet Registration Form.
   2. Register a current pet within 60 days after the effective date of this policy, or, register a newly acquired pet within one week of its acquisition (if the acquisition is permitted by this policy).
   3. Provide a certificate annually from a licensed Veteranian stating that the pet has received all inoculations required by state and local laws.
   4. Utilize proper restraining devices on all pets when in common areas of the building and grounds. Dogs shall be leashed.
   5. Maintain balconies free of pets at all times.
   6. Keep pets from all areas designed "No Pets Allowed."
   7. Ensure tags/license are visible and intact on pet at all times when in common areas of building and grounds.
   8. Ensure that pets are accompanied by a responsible individual who has control of the animal when in the common areas of the building or grounds.
   Reproduced Record, 78–79 (R.R.——).

with the terms of the policy.[2]

The President of the Residents Council, Claudette Bennett (Bennett), receives complaints from tenants on housing-related issues, including pets. In the spring of 1999, Bennett began receiving complaints regarding a black pit bull (Dog)[3] owned by Peggy Skinner (Skinner),[4] a tenant. Each day Skinner tied the Dog to a tree with rope in a common area outside of her residence, where she left him unattended until she returned from work. Other tenants complained that the Dog smelled, barked and jumped. In response to these complaints, Bennett notified the property manager of the housing development, Gary French (French), of the complaints and expressed concern that the unattended Dog might attack a resident. French agreed to address the situation.

However, on July 18, 1999, before French acted on the complaints, the Dog broke free of the rope and attacked Govan who was playing in the common area with other children. Govan's father intervened by hitting the Dog with a toy until it released his grip. As a result of the attack, Govan sustained injuries to his head, face, side, shoulder, buttocks and back.

Subsequently, on May 18, 2001, Govan, through his parents, filed a complaint against PHA. Govan alleged that PHA was negligent by permitting the Dog, a dangerous animal, to remain on the premises tied up in a common area without supervision, which was in violation of the pet policy. In addition, Govan alleged that PHA was negligent *per se* because it allowed the Dog to run loose in violation of the Dog Law.[5]

After the pleadings were closed, PHA moved for summary judgment[6] for the reason that Govan's action was barred by the doctrine of sovereign immunity as provided in Section 8522 of the Judicial Code.[7]

2. The pet policy provides in relevant part,
The [PHA] will arrange for the impoundment of any animals found unattended in common areas.
PHA reserves the right to require the removal of any pet from the development which threatens the health, safety or welfare of other PHA Tenants and/or employees, or when the pet is not maintained pursuant to the requirements of this policy. Failure by the Tenant to remove the pet is a violation of the Dwelling Lease and will result in the removal of the pet by PHA or eviction should the removal of the pet be impeded by the Tenant or risk the health and safety of PHA staff.
PHA shall effect other measures, as necessary, to ensure peaceful enjoyment of the development by all Tenants.
R.R. 79.

3. The record is unclear as to whether the Dog was a true pit bull or a mixed breed that included pit bull ancestry. The parties in their pleadings refer to the animal as a pit bull.

4. The Dog was owned by Skinner's son who was incarcerated but Skinner accepted responsibility for the Dog while he was gone.

5. Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§ 459–101–1205.

6. Summary judgment is properly granted where there is no genuine issue of material fact as to a necessary element of a cause of action and the moving party has clearly established entitlement to judgment as a matter of law. *Herman v. Greene County Fair Board*, 112 Pa.Cmwlth. 615, 535 A.2d 1251, 1253–1254 (1988); Pa. R.C.P. No. 1035.2. The record must be viewed in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Dean v. Department of Transportation*, 561 Pa. 503, 507, 751 A.2d 1130, 1132 (2000).

7. Sovereign immunity insulates Commonwealth agencies from damages arising out of a negligent act *unless* the plaintiff proves the following: (1) that damages sought would be recoverable under common law or statute creating a cause of action against a person not protected by sovereign immunity; and (2) the injury falls within an exception to the general grant of immunity to the Commonwealth. 42 Pa.C.S. § 8522; *Dean*, 561 Pa. at 507–508, 751 A.2d at 1132.

PHA also argued that even if it were not immune, it did not have liability for Govan's injuries even under common law because it did not have prior knowledge of the Dog's vicious propensities. Further, PHA contended that it did not violate the Dog Law because the Dog was not running loose; the Dog escaped its confinement.

Govan opposed summary judgment, contending that the care, custody and control of animals exception to sovereign immunity applied.[8] Govan argued that PHA had constructive control over the Dog because it had the power to require its removal once it had knowledge that Skinner was violating the pet policy by leaving the Dog unattended all day.

On April 15, 2002, the trial court denied PHA's summary judgment motion without an opinion. PHA filed a motion for reconsideration and, in the alternative, clarification as to the meaning of the trial court's order. On May 23, 2002, the trial court denied PHA's motion for reconsideration. PHA requested the trial court to certify its April 15, 2002 order for an interlocutory appeal, but the trial court denied this request.

Thereafter, the parties consented to an expedited bench trial. On July 19, 2002, after considering the submissions of the parties, including deposition testimony, the trial court concluded that the April 15, 2002 order with respect to sovereign immunity was the law of the case.[9] The trial court found PHA liable for Govan's injuries and awarded him damages in the amount of $50,000.

PHA appealed the July 19, 2002 order to this Court. Thereafter, the trial court filed an opinion in support of its order. The judge reasoned that the doctrine of coordinate jurisdiction[10] required her to follow the April 15, 2002 order entered by another judge. Her opinion did not address PHA's sovereign immunity defenses, and it did not make an independent finding that PHA had actual knowledge of the Dog's ferocity.

■ The sole issue before this Court is whether the care, custody and control of

8. The applicable statute provides as follows:

   **(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

   * * *

   **(6) Care, custody or control of animals.**—The care, custody or control of animals *in the possession or control of a Commonwealth party,* including but not limited to police dogs and horses and animals incarcerated in Commonwealth agency laboratories. Damages shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute.

   42 Pa.C.S. 8522(b)(6)(emphasis added).

9. The certified record shows that the trial court did not receive the evidence of live witnesses; instead, it considered the submission of the parties, which submissions constitute the entire record.

10. The trial court explained,

    The doctrine of coordinate jurisdiction is embodied in the law of the case doctrine and states that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor or trial court." *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995).

    Trial Court Opinion, 2. The case was transferred from the Honorable Esther Sylvester, the trial court judge who denied PHA's motion for summary judgment, to the Honorable Jacqueline F. Allen, the trial court judge who wrote the opinion declining to reverse the July 19, 2002 order. Thus, the trial court concluded that "[s]ince this Court is the transferee court, it is prohibited from altering the determination of the Honorable Esther Sylvester." *Id.*

animals exception to sovereign immunity applies.[11] PHA argues that the exception does not apply because PHA did not have direct control over the Dog when the incident occurred. Govan contends that although PHA did not have direct control over the Dog, PHA had constructive control over the Dog.

■ Commonwealth agencies, such as PHA, enjoy a general immunity from liability for negligence. The Judicial Code enumerates specific exceptions to sovereign immunity, including an exception for "animals in the possession or *control* of a Commonwealth party." 42 Pa.C.S. 8522(b)(6)(emphasis added).[12] The Judicial Code does not define the term "control," and this Court has not had occasion to explain its meaning with respect to *sovereign* immunity. However, in *Jenkins v. Kelly*, 92 Pa.Cmwlth. 140, 498 A.2d 487 (1985) and *Herman v. Greene County Fair Board*, 112 Pa.Cmwlth. 615, 535 A.2d 1251 (1988) our Court has construed the term "control" in the context of *governmental* immunity, also set forth in the Judicial Code at 42 Pa.C.S. § 8542(b)(8).[13] This precedent is directly applicable. *See Kilgore v. City of Philadelphia*, 553 Pa. 22, 25 n. 2, 717 A.2d 514, 516 n. 2 (1998) (noting that statutes dealing with governmental and sovereign immunity are to be interpreted consistently because they deal with indistinguishable subject matter).

In *Jenkins*, this Court held that the City of Philadelphia was not in "control" of a stray dog that attacked plaintiff under the exception because "[t]he City is responsible for animals in *its* possession or control .... a stray dog cannot be considered an animal within the possession or control of the City." *Jenkins*, 498 A.2d at 488–489. In *Herman* this Court held that Greene County was not in "control" of horses for purposes of the exception where the horses broke free of their owners during a County horse pulling contest. The Court reasoned that

> there is no dispute that *the horses broke away from the direct control of third parties.* If the horses had not broken away from the control of the third parties, the alleged harm would not have occurred. Any negligence on the part of these third parties may not be imputed to the Greene County defendants. Therefore, even if the Greene County defendants were negligent in allowing the horses to compete in the pull, they may not be held liable for any harm caused when the horses escaped from the control of third parties.

*Herman*, 535 A.2d at 1255 (emphasis added). In short, this precedent establishes that the animal exception to governmental immunity does not apply except where the animal is in the direct control of the governmental agency.

Further, this Court has explained the meaning of "control" in the context of other exceptions to sovereign immunity set forth in the Judicial Code. *See Walters v.*

---

11. PHA does not specifically address in its brief to this Court, or in its statement of matters complained of on appeal, the first prong of the test for waiver of sovereign immunity, *i.e.*, whether damages would be recoverable under statute or common law against a person not protected by sovereign immunity. PHA's argument centers on the second prong of the test.

12. *See supra* n. 8.

13. It provides,

> (8) *Care, custody or control of animals.*— The care, custody or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses. Damage shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute.
>
> 42 Pa.C.S. § 8542(b)(8).

*Department of Transportation,* 81 Pa. Cmwlth. 478, 474 A.2d 66, 67 (1984) (holding that Department of Transportation did not have control over an uninsured motorist's vehicle as intended by the personal property exception to sovereign immunity where it failed to physically obtain custody of motorist's driver's license and allowed him to possess a license plate); [14] *see also Giovannitti v. Department of Transportation,* 113 Pa.Cmwlth. 572, 537 A.2d 966, 968 (1988) (holding that Department of Transportation did not have control of motorist's driver's license because "although [the Department of Transportation] may have had a duty to recall [the motorist's] license, this authority to revoke does not involve physical possession or actual control sufficient to bring the license within the ambit of [the personal property exception to sovereign immunity]").

■ Finally, this Court has rejected the argument that a Commonwealth agency's regulatory and enforcement authority equates with "control" for purposes of sovereign immunity. *See Kline v. Pennsylvania Mines Corp.,* 120 Pa.Cmwlth. 7, 547 A.2d 1276, 1278 (1988) (rejecting argument that Department of Environmental Resources' regulatory and enforcement powers gave it control over a mine and personalty under the personal property exception to sovereign immunity, 42 Pa.C.S. 8522(b)(3),[15] because it "calls for an overly-expansive interpretation of the term 'control' for purposes of this statute, and one which is unsupported by appellate authority"); *see also CSX Transportation, Inc. v. Franty Construction,* 157 Pa.Cmwlth. 620, 630 A.2d 932 (1993) (rejecting argument that the Department of Environmental Resources' authority to regulate mining and reclamation activities amounted to control over a private mine under the real estate exception to sovereign immunity, 42 Pa. C.S. 8522(b)(4)).[16] Accordingly, the fact that PHA's pet policy gave it authority to remove the Dog did not mean that it had

**14.** In *Walters,* this Court also held that the Department of Transportation did not have control over the motorist's vehicle for the vehicle liability exception, 42 Pa.C.S. § 8522(b)(1), to apply because the Department of Transportation did not have control over it "in any functional sense." *Walters,* 474 A.2d at 67.

**15.** It provides:

**(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

\* \* \*

**(3) Care, custody or control of personal property.**—The care, custody or control of personal property in the possession *or control of Commonwealth parties,* including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

42 Pa.C.S. § 8522(b)(3)(emphasis added).

**16.** It states:

**(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

\* \* \*

**(4) Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

42 Pa.C.S. 8522(b)(4).

"control" within the meaning of the statutory exception to sovereign immunity. Stated otherwise, constructive control is inadequate to defeat the defense of sovereign immunity.

■ The premise to Govan's constructive control argument is that PHA had knowledge of the Dog's vicious tendencies. However, we do not believe that the record supports this premise. Bennett testified that the Dog "smelled," "snapped and barked and annoyed people and jumped at people." R.R. 82–83, 154. Despite its annoying habits, a neighborhood boy took the Dog for walks around the development. Further, the Dog did not harm anyone until the incident with Govan.[17] When Bennett notified French about the Dog, she expressed concern for the children in the development and stated "that he *could* jump and bite someone that, you know, was just coming by." R.R. 125 (emphasis added). Bennett's speculation that the Dog could or might harm someone did not inform PHA that the Dog, in fact, was dangerous.[18]

In accordance with our precedent on the meaning of "control" with respect to governmental and sovereign immunity, we hold that PHA was not in control of the Dog when it injured Govan. PHA's authority to eject a tenant for violating its pet policy did not give it control of the Dog for purposes of the care, custody and control of animals exception to sovereign immunity. PHA did not own the Dog, and it was not in physical possession of the Dog at the time of the incident. *See also Dean v. Department of Transportation,* 561 Pa. 503, 508, 751 A.2d 1130, 1132 (2000) and *Bradley v. Pennsylvania Turnpike Commission,* 121 Pa.Cmwlth. 51, 550 A.2d 261, 263 (1988) (noting that we have consistently held that exceptions to sovereign immunity must be strictly construed). In fact, the basis of Govan's complaint is that PHA *failed* to exercise control over the Dog, resulting in his injuries.[19]

It is not acceptable that a three-year-old child cannot play safely in a common area

---

17. The record is not clear on whether the Dog attacked Govan or merely nipped him. In her telephone statement, Bennett testified that the Dog nipped Govan and kept nipping him.

18. Although not raised by Govan, we note that based on these facts Govan could not meet the first prong of the test for waiver of sovereign immunity, *i.e.,* whether damages would be recoverable under statute or common law against a person not protected by sovereign immunity. First, Govan does not have a common law cause of action against PHA because there is no evidence that PHA had knowledge that the Dog was dangerous or posed an unreasonable risk of harm to Govan. *See Banks v. Trustees of the University of Pennsylvania,* 446 Pa.Super. 99, 666 A.2d 329, 331 (1995) (noting that a possessor of land cannot be held liable for harm to an invitee unless he (1) knows or by the exercise of reasonable care could discover the condition that involved an unreasonable risk of harm to such invitee; (2) should expect that the invitee will not discover or realize the danger; and (3) fails to exercise reasonable

care to protect the invitee against the danger). Second, Govan does not have a statutory cause of action against PHA under the Dog Law, because it does not give rise to a private right of action, and there is no claim that PHA violated the Dog Law. *Lerro v. Upper Darby Township,* 798 A.2d 817, 820–822 (Pa. Cmwlth.2002).

19. Govan alleged, in relevant part, that:

24 ... [T]he agents, servants, workmen and/or employees of Defendant were acting in a negligent ... manner in that they *failed to* prevent, supervise and/or intervene, *control* the subject premises and the occupants of the subject premises and failed to take the appropriate steps necessary to correct the dangerous condition of the subject premises and provide a safe and secure premises.

* * *

29. Defendant was reckless, negligent, negligent *per se,* and careless in *not taking steps* to restrain, *control,* evict and/or halt the vicious attack upon Minor Plaintiff.

outside his home.[20] PHA should be more protective in its policies and more vigilant in their enforcement. However, it is inescapable that PHA did not have direct control over the Dog at the time of the incident. The care, custody and control of animals exception to sovereign immunity does not apply,[21] and, accordingly, we reverse the judgment of the trial court.

## ORDER

AND NOW, this 27th day of April, 2004, the order of the Court of Common Pleas of the First Judicial District dated July 19, 2002, in the above-captioned matter is reversed.

## DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the majority's decision to reverse the order of the Court of Common Pleas of Philadelphia County (trial court), which entered a $50,000 judgment against the Philadelphia Housing Authority (PHA) in the negligence lawsuit filed by Latif Wheeler Govan (Govan), through his parents, for injuries that he sustained as a result of a pit bull dog attack on PHA's premises. Govan alleged several theories of negligence, including a failure to control a dog secured on PHA's premises, a failure to adhere to its duties under a pet policy that it devised for PHA residents and for violations of the Dog Law, Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. 459–101–459–1205. PHA's pet policy requires tenants, among other things, to register, restrain and control their pets. It further empowers the PHA to impound any pets left unattended in the common areas and to remove any pet that threatens the health, safety or welfare of residents or employees.

30. On the date stated, the above-mentioned accident resulting in injuries to Minor Plaintiff was a direct and proximate result of the negligence, gross negligence, recklessness, carelessness, wanton and/or willful misconduct of the Defendant, which negligence, gross negligence, recklessness, carelessness, wanton and/or willful misconduct consisted of, but is not limited to the following:

* * *

b. *Failing to control* the dangerous and vicious canine pit-bull within its care, custody and control and which was on its premises;

* * *

d. Failing to remove the dangerous dog from its premises;

* * *

h. Failing to evict its tenant and/or the dangerous canine pit-bull when Defendant knew of the dangerous condition;

* * *

r. Failing to keep the dangerous and vicious pit-bull properly restrained, controlled, monitored and supervised;

* * *

dd. *Failing to control* the premises, its tenants and the animals of its tenants and prevent them from harming Plaintiffs;

ee. *Failing* to restrain, restrict, *control* and/or prevent the occurrence and/or accident;

Govan's Cmpl. Count 1, ¶¶ 24, 29 & 30 (emphasis added).

20. The acts of the Dog have consequences for Skinner. She may be liable in tort and be subject to criminal sanctions.

21. PHA also contends that the care, custody and control of personal property exception to sovereign immunity does not apply in this case. PHA Brief, 12–14. However, Govan does not dispute this point. Govan Brief, 9, n. 2. Thus, we need not address it.

PHA moved for summary judgment on the grounds that, as a Commonwealth agency, it was entitled to sovereign immunity from Govan's action pursuant to Sections 8501–8521 of Judicial Code, 42 Pa. C.S. 8501–8521. PHA further argued, among other things, that Govan was not entitled to rely upon the immunity exception set forth at 42 Pa.C.S. 8522(b)(6) relating to the "[c]are, custody or control of animals."[1] PHA asserted that it did not own or possess the dog, nor was the dog under PHA control, constructive or otherwise, at the time of the incident. The trial court denied PHA's motion without a supporting opinion. Following the trial court's denial of PHA's motions for reconsideration and certification to allow an interlocutory appeal, the parties requested the trial court to hold an expedited bench trial. The trial court did not analyze the sovereign immunity issue but instead applied the doctrine of coordinate jurisdiction, which precluded the trial court from altering the previously-determined legal issue of immunity by another judge of the same court.

PHA appealed, contending that the trial court erred by denying PHA's motion for summary judgment. PHA argues that the exception to sovereign immunity pertaining to the care, custody, and control of animals does apply as a matter of law. PHA does *not* argue that Govan failed to plead an action seeking damages recoverable under common law or statute and does *not* contest the award against it except on the grounds of immunity. Nor does PHA contest any factual matter. The trial court did not set forth any formal findings of fact, except for the general description of the dog attack on Govan. However, PHA did not introduce evidence disputing the factual narration provided by the president of the resident's council at Cambridge Plaza, Claudette Bennett, regarding the keeping of the dog in the common areas of Cambridge Plaza; her notification to the PHA manager of complaints regarding the behavior of a black pit bull or pit bull mix owned by a tenant, Peggy Skinner; or her statement of facts surrounding the dog attack against Govan.[2] The evidence showed that Skinner tied the dog to a tree in a common area of the Plaza where she left it unattended each day until she returned from work.

The majority has reversed the trial court based on its conclusion that the care, custody and control of animals exception to sovereign immunity does not apply because PHA did not have direct control

1. Section 8522(b)(6) provides:

   **(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

   . . . .

   **(6) Care, custody or control of animals.**—The care, custody or control of animals in the possession or control of a Commonwealth party, including but not limited to police dogs and horses and animals incarcerated in Commonwealth agency laboratories. Damages shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute.

2. This Court's review of a trial court order disposing of a motion for summary judgment is limited to whether the court committed an error of law or abused its discretion. *Downingtown Area School District v. International Fidelity Ins. Co.*, 671 A.2d 782 (Pa.Cmwlth. 1996). Summary judgment may be granted only when the moving party demonstrates that there are no genuine issues of material fact and that the moving party is entitled to favorable judgment as a matter of law. *Id.* The record must be reviewed in a light most favorable to the non-moving party. *Zablow v. Board of Education of the School District of Pittsburgh*, 729 A.2d 124 (Pa.Cmwlth.1999).

over the dog when the incident occurred. Govan did not simply allege that PHA was in control of the dog at the time of the attack only because of PHA's authority under its pet policy; he also alleged that PHA had control over the dog by virtue of the fact that the dog was secured on property owned and controlled by PHA with PHA's knowledge.

The record clearly supports Govan's position when reviewed in a light most favorable to Govan as the non-moving party. For approximately several months, the dog was tied each work day to a tree in the common area of Cambridge Plaza while its owner or keeper was at work. The dog reportedly barked, jumped at passersby and behaved erratically. PHA was directly informed of this circumstance on two occasions, the first occurring one and one-half months before the attack. Although PHA did not take actual physical control of the dog and secure it elsewhere, the fact remains that the dog was deposited on PHA property and remained there each work day with PHA's actual knowledge. This undisputed evidence establishes that PHA had possession of or control over the dog for purposes of the sovereign immunity exception for care, custody, or control of animals. The provisions related to sovereign immunity do not define "control," but a common definition of the noun is the "[p]ower or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee [and t]he ability to exercise a restraining or directing influence over something." Black's Law Dictionary, 329 (6th ed.1990). Clearly, PHA as the owner and direct manager of the property had the authority to take such action regarding a pit bull attached to the property with or without its consent.

There are few cases that interpret the care, custody, or control of animals exception to immunity, particularly where a wild animal is not involved. In *Jenkins v. McDonald,* 92 Pa.Cmwlth. 140, 498 A.2d 487 (1985), the plaintiff was attacked on a city sidewalk by a stray dog. The Court rejected the plaintiff's argument that the city was liable pursuant to the care, custody, or control of animals exception to local governmental immunity set forth at 42 Pa.C.S. 8542(b)(8),[3] and it determined that a stray dog could not be considered in the care, custody or control of a municipality. Further, the Dog Law, which authorizes municipalities to seize and detain stray dogs, does not bring stray dogs under the care, custody or control of the municipality for purposes of the exception to immunity. The present case, however, is quite dissimilar. Here, the dog was not a stray that wandered onto the property of PHA one day to attack a child. Rather, the dog was on the premises every work day and leashed to a tree on PHA's property with actual knowledge that its property was being used for such purposes.

In *Herman v. Greene County Fair Board,* 112 Pa.Cmwlth. 615, 535 A.2d 1251 (1988), the plaintiff was injured when a team of horses broke loose while in the direct control of their owner during a horse-pulling contest at a county fair. This Court rejected the plaintiff's argument that the county was liable pursuant to the care, custody or control of animals exception to local governmental immunity, on the grounds that the horses were within the direct control of a third party, not the county, at the time of the incident. Citing *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), the Court noted that negligent acts of third parties cannot

---

3. The Supreme Court has held that the sovereign immunity and local governmental immunity statutes would be interpreted consistently where they deal with similar subject matter. *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992).

be imputed to government agencies under immunity provisions. *Herman,* however, does not support PHA's contentions. First, the dog that attacked Govan was arguably in direct control of PHA at the time of the incident as it was leashed to PHA property with actual knowledge. Second, the Supreme Court has "refined" *Mascaro* to confirm that an agency may be liable despite the presence of third-party negligence if the facts establish that the agency is jointly negligent. *Jones v. Chieffo,* 549 Pa. 46, 700 A.2d 417 (1997).

PHA also argues that the immunity exception is unavailable to Govan pursuant to *Palermo by Palermo v. Nails,* 334 Pa.Super. 544, 483 A.2d 871 (1984), wherein the Superior Court held that a landlord out of possession is not responsible for attacks by animals kept by his or her tenant on leased premises where the tenant has exclusive control over such premises. This argument would more closely relate to the issue that PHA has not specifically raised: whether Govan met the first prong of the test for waiver of sovereign immunity, that is, whether damages would be recoverable under statute or common law if the party were not protected by sovereign immunity. Even if PHA had not waived this issue for failure to raise it in the Statement of Questions on Appeal, *Palermo* would be of no support to PHA in any event. PHA was not a landlord out of possession at the time of the incident. The attack did not take place in Skinner's apartment or on premises within her exclusive control. Rather, it took place on common ground in control of PHA, which had an on-site manager on the premises. Thus, PHA, as landowner, owed Govan, as invitee, the duty of protec-

tion from foreseeable harm. *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983).[4]

Being ever mindful of the fact that exceptions to immunity provisions must be strictly construed, *Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1994), I nonetheless am convinced that the facts in this case clearly show that PHA had control of the dog at the time of its vicious attack against Govan. It matters not that the dog belonged to a tenant or to a stranger. PHA permitted an individual to leash a dog with obviously dangerous and vicious tendencies on its property on a daily basis for a period of months. The foreseeability of harm to a young child playing in the common area was evident, and because PHA had direct and actual knowledge that the dog was being deposited and leashed to a tree on its property PHA assumed control over the animal.

The majority cites no conclusive case authority to support its holding that PHA cannot be held liable under the exception to immunity for care, custody and control of animals based on the undisputed facts presented. Instead, the majority merely infers as much from cases, *inter alia,* pertaining to injuries caused by a stray dog, *Jenkins,* or holding that a state agency lacked control over an uninsured motorist's vehicle for purposes of the personal property exception to immunity because the agency's authority to revoke the driver's license did not involve physical possession or actual control. *Walters v. Department of Transportation,* 81 Pa.Cmwlth. 478, 474 A.2d 66 (1984). A proper application of well-settled summary judgment principles dictates that the trial court did

4. I also note that a dog in this Commonwealth does not enjoy "one free bite" before liability for its actions may attach to its owner or caretaker. *Villaume v. Kaufman,* 379 Pa.Super. 561, 550 A.2d 793 (1988); *Snyder v.*

*Milton Auto Parts, Inc.,* 285 Pa.Super. 559, 428 A.2d 186 (1981). *See also Commonwealth v. Hake,* 738 A.2d 46 (Pa.Cmwlth. 1999).

not err in denying PHA's motion for summary judgment.

President Judge COLINS joins in this dissenting opinion.