## The Bank of Pennsylvania *versus* Gries.

An architect employed to make the plans and drawings for a building, and to direct and oversee its erection in accordance therewith, is within the provisions of the mechanics' lien law, and entitled to a lien against the building for his labour.

Such a party is entitled to recover the full amount of his contract, although the work was stopped by his employers, before it was entirely completed.

*It seems*, that a mere architect, who only furnishes the plans and drawings, and performs no services in the erection of the building, is not entitled to a lien.

ERROR to the District Court of *Philadelphia*.

This was a *scire facias* by John M. Gries against The President, Directors and Company of the Bank of Pennsylvania, on a mechanic's claim for $3500, upon a contract for the performance of work and labour done as an architect, in and about the erection and construction of the defendants' banking-house, in Chestnut street, in the city of Philadelphia.

On the trial, the plaintiff gave in evidence the following agreement, under which the services for which the claim was filed, had been performed:—

"This agreement, made this twenty-ninth day of November, Anno Domini (1856) one thousand eight hundred and fifty-six, between The President, Directors and Company of the Bank of Pennsylvania, in the first part, and John M. Gries, of the city of Philadelphia, architect, in the second part, witnesseth: That the party of the first part, being about to build new buildings on a lot of ground owned by them, situate upon the north side of Chestnut street, between Fourth and Fifth streets, in the city of Philadelphia, do appoint the party of the second part their architect, for the construction of the same, his duties to be as follows, viz.: To make all designs, plans, and drawings of the said buildings and their furniture; to fully explain to and direct the execution of the same by the various mechanics employed by the party of the first part therefor; to draw up specifications, contracts, and agreements of and for each and every part of said work; in con-

[The Bank of Pennsylvania *v.* Gries.]

nection with the superintendent to be appointed by the party of the first part, to superintend these works, examining the progress of the same, and the materials provided therefor; and to report their conformity with the requirements of the drawings and specifications to the appointed authority of the party of the first part whenever required; to advise with the same in contracting for any part or portion of the work and materials; to examine all accounts connected therewith, and countersign all orders for payment of moneys thereupon; and in all duties and privileges to have full authority, as architect.

"The party of the second part agreeth that he will well and faithfully perform all the duties of architect of the works now about to be executed by the party of the first part, as named before, for the compensation of thirty-five hundred dollars ($3500), paid as the work progresses. To all of which the parties have set their hands and seals, the day and date as first above written."

On the 6th February 1858, before the entire completion of the building, the defendants gave notice to the plaintiff to stop the further progress of the work; and immediately afterwards he filed his claim against the building.

After the plaintiff had closed his testimony, the defendants' counsel requested the court to charge the jury as follows:—

1. That the services mentioned in the said written agreement were not such as to give the plaintiff a lien therefor on the said building.

2. That the said building was not finished by the defendants, nor had the whole of the services mentioned in said agreement been rendered by plaintiff when he filed his claim therefor.

3. That the plaintiff was not entitled to recover the whole amount of his claim.

The learned judge refused so to charge, and instructed the jury to find for the plaintiff, for the whole amount of his claim. To this charge the defendant excepted; and a verdict and judgment having been given for the plaintiff for $1615, the defendant sued out this writ, and here assigned the same for error.

*J. F. Johnston*, for the plaintiff in error, cited Jones *v.* Shawhan, 4 *W. & S.* 264; Hoatz *v.* Patterson, 5 *Id.* 538; Bolton *v.* Johns, 5 *Barr* 146.

*Wollaston*, for the defendant in error.

The opinion of the court was delivered by

THOMPSON, J.—The lien as filed was "upon a contract for the performance of work and labour as architect" upon the bank building of plaintiff in error. The bill of particulars specifies the

claim to be the "amount of the contract price for work, labour, plans, and drawings furnished in and about the erection and construction of the building." The contract was with the defendant in error by the designation of "architect," and his duties were principally defined to be "to make all designs, plans, and drawings of the said buildings and furniture; to fully explain and direct the execution of the same by the various mechanics," &c. There were other stipulations for services to be performed by the plaintiff, but they constitute no part of the claim filed, nor was there any controversy about them.

These duties, and for the performance of which the claim was filed, were immediately connected with the erection of the building, and deemed necessary to its satisfactory construction by the plaintiffs in error. Does such a claim come within the purview of the mechanics' lien laws?

The Acts of Assembly of 1803 and 1806, designated the mechanics and material men entitled to file liens, but this was omitted in the Act of June 15th 1836, and in lieu thereof a general provision was substituted, by which houses and buildings covered by the act should be subject to a lien for the payment of all debts contracted "for work done or materials furnished for or about the erection or construction of the same." The object of the legislation was to secure mechanics and material men, whose labour, skill, and materials were employed upon and used in buildings. The generality of the provision, however, casts upon the courts the duty of ascertaining not only who are entitled to the benefits of the act, but what kind of services are within its protection. The contract in this case denominates the plaintiff an *architect*. That he was at the same time a mechanic, is evident from the requirement not only to draw the plans of the work to be done, but the duty of explaining and directing its proper execution. This is work often done by the master-mechanic, and is as essential to the due construction of a building as is the purely mechanical part; for without it, shape, symmetry, and proportion would be wanting: elements, not of beauty alone, but of strength and convenience, in every superstructure. To preserve these elements, some architectural skill is required, but is generally exercised, in ordinary buildings, by a mere mechanic by occupation. This would certainly not impair his right to a lien as such mechanic. A mere naked architect, and who may be such without being an operative mechanic, who draws plans in anticipation of buildings usually, to enable the builder to determine the kind he will erect, could hardly be supposed to be within the act which provides a lien for work "done for or about the erection or construction of the building." But very distinguishable from this, is the case of a party employed to devote his entire time to a building, and who draws the plans for every part of the work, and directs its execution according to

such plans and specifications.  This is labour—mechanical labour of a high order—contributing its proportionate value to the beauty, strength, and convenience of the edifice.  Why is this not entitled to be considered as meritorious as mere manual labour with the tools of a trade ?  Both are necessary to the accomplishment of the end in view, and both are necessary, or were deemed so to be in this case, to the progress of the building, and were performed in and about its construction.  There was nothing in the case to show that such an employee as the plaintiff below was not a mechanic, and not within the meaning of the Acts of Assembly. We find nothing in the definitions to the contrary, and we think the very nature of the work, for which the lien was filed here, was such as entitled the plaintiff to file the lien.

The Act of 1836 seems to favour the idea that an architect in charge of a building might file a lien for his labour.  In the 12th section it is provided, that the claimant shall file his lien "against the owner or reputed owner of the building, and also against the contractor, *architect,* or builder, when the contract of the claimant is made with such contractor, *architect,* or builder."  An architect is here placed on the same footing with a contractor, and the latter may file his lien since the passage of the Act of 1845.  It was against this class of claimants that the cases of Jones *v.* Shawhan, 4 *W. & S.* 257, Hoatz *v.* Patterson, 5 *Id.* 537, and Haley *v.* Prosser, 8 *Id.* 133, were levelled.  The burden of the argument in those cases was the inconvenience of double liens—liens in favour of the contractor, and also in favour of their mechanics and material men.  It was of a contractor claiming a lien that GIB- SON, C. J., said, in the first of these cases, "he took his own security, and furnished nothing but his superintendence and skill as an undertaker, and was therefore not entitled to a lien."  This decision and the others which followed led to a change of the law, and the Act of 10th April 1845 was passed, requiring the Act of 1836 to be so construed as to allow the filing of a lien by a contractor.  These cases, therefore, strengthen the position taken, as is obvious from the grounds on which they were decided, and the legislative repudiation of those grounds.

We are, therefore, of opinion that, where a party, although denominated an architect, as here, is under employment by the owner or contractor of a building, and devotes his time in making plans and drawings of the work to be done, and in directing and overseeing its execution in accordance therewith, he is within the statute, and entitled to file a lien for his labour, and that the learned judge of the District Court was right in so holding in this case.

The second assignment of error is to the ruling of the court in affirming the right of the plaintiff below to file a claim for his entire contract, although the work was stopped by order of the defendant below before it was quite completed.  This is fully sus-

tainable on general principles, and is ruled by Young *v.* Lyman, 9 *Barr* 449, recognised in Barclay's Appeal, 1 *Harris* 495. These two points thus noticed embrace the entire ground of controversy in this court, and, as we perceive no error in the record, the Judgment is affirmed.