Commonwealth to use Walters Tire Service, Inc. *v.* National Union Fire Insurance Company, Appellant.

Argued March 20, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Robert F. McCabe, Jr.,* with him *James M. McCand-less,* for appellant.

*John L. Laubach, Jr.,* with him *Jack W. Plowman,* and *Kenney, Stevens, Clark & Semple,* and *Plowman & Spiegel,* for appellee.

OPINION BY MR. JUSTICE JONES, April 23, 1969:

These two cases, consolidated for trial in the Court of Common Pleas of Allegheny County, involve substantially the same factual situation. Walters Tire Service, Inc. (Walters) brought suits against appellant, National Union Fire Insurance Company (National) as surety on a labor and material payment bond given in each case by the Indyk Brothers Construction Company (Indyk) in connection with contracts for certain excavation work on two separate highway construction projects in the Commonwealth. In both cases Walters had supplied Indyk with quantities of tires designed for heavy earth-moving equipment. When Indyk got into financial difficulty, National took over the projects and finished both jobs. The claims in these two suits involve amounts allegedly due from Indyk before National took over the projects.

The pertinent bond language in each case is almost identical. The crucial language in one bond obligated National in the event of default by Indyk to pay "all

just claims for materials furnished . . . in the prosecution and completion of the work to be done . . . whether or not said materials . . . entered into and became component parts of the work or improvement contemplated . . . ." The other bond required payment "for all material furnished . . . in the prosecution of the work, whether or not the said material . . . enter into and become component parts of the work or improvement contemplated . . . ." The jury returned verdicts in favor of Walters in both cases, and, after interest was computed, Walters recovered the sums of $43,-246.26 and $77,070.59 in the two cases. The court en banc dismissed motions for a judgment n.o.v. and for a new trial, and from judgments entered on the verdicts the instant appeals were taken.

National's first contention is that tires and related products are not included within the terms of the surety bonds. Both parties agree, and our research indicates, that this is a case of first impression on the appellate level in Pennsylvania. In the only Pennsylvania decision which we have found apposite, the Court of Common Pleas of Allegheny County held that tires were included within the bond's coverage. *Pennsylvania Turnpike Commission v. Eidemiller*, 89 Pitts. L. J. 477 (1940).

The blackletter rule governing what items are included within the terms of the bond was set forth by the Superior Court in *Philadelphia School District v. B. A. Shrages Co.*, 134 Pa. Superior Ct. 533, 4 A. 2d 558 (1939), *aff'd per curiam*, 336 Pa. 433, 9 A. 2d 900 (1939). In that case the Court held that scaffolding which would be removed after completion of the project in a reusable condition was not included within the terms of the bonds. The Court recognized that we held in *Commonwealth v. Ciccone*, 316 Pa. 111, 173 A. 642 (1934), that gasoline and oil used to operate ma-

chinery in the course of construction were included within the terms of the bond but then developed the following distinction which we think adequately reflects the state of the law today: "But we think there is a clear distinction between such material [e.g., gasoline, oil, form lumber and nails] and the *purchase* of *equipment, apparatus and appliances* which were not intended to go into or become a part of the improvement, or to be consumed or used up in the prosecution of the work, but which were intended as aids or appliances which the contractor would naturally be expected to furnish, and which he would take away with him on the completion of the work, to be used by him in like manner on subsequent contracts." (134 Pa. Superior Ct. at 542) We are of the opinion that this distinction is sound and that tires which will be consumed in the course of the construction are included within the terms of the bond.

The largest single body of law on this subject is found in federal court decisions interpreting the Miller Act, 40 U.S.C., §§270a-270d. In a case almost on all fours with the present actions, the Court of Appeals for the Second Circuit held that tires are included within the terms of the surety bond. *United States ex rel. J. P. Byrne & Co. v. Fire Association of Philadelphia,* 260 F. 2d 541 (1958). The District Court for the Northern District of Oklahoma later specifically held that "A surety under the Miller Act is liable to one who furnishes materials (tires, etc.) in the prosecution of the public work involved even though such materials were not installed in the work (highway)." *United States ex rel. Tom P. McDermott, Inc. v. Woods Const. Co.,* 224 F. Supp. 406, 409 (1963). We conclude that these federal decisions more adequately comport with the purposes of surety contruction bonds than does the position advocated by National and we,

therefore, hold that tires and related products consumed in the course of completing the project are included within the terms of the surety bond.

National next argues that, even if we do hold that tires are included within the coverage of the bonds, nevertheless the court below committed reversible error in charging that Walters need not prove that the tires were actually consumed in the two construction projects. The court below charged: "[I]f at the time the Walters Tire Service, the plaintiff, delivered to the job bonded by the defendant any new tire, recapped tire, tubes, services, and other items claimed for them there and you believe that at that time Mr. B. F. Walters president of the Walters Tire Service *reasonably and in good faith expected that they would be substantially used up on the job* to which they were delivered then you shall find in favor of the plaintiff and against the defendant for such items." (Emphasis added) National argues that, if this Court adopts the federal consumption distinction, then Walters was required to prove that the tires were, in fact, actually consumed. Although this position seems convincing at first blush, we are persuaded by the federal decisions which have rejected National's argument and subscribed to the position adopted by the lower court in its charge to the jury. In *Woods Const. Co.*, supra, the court held "Therefore, the proper test to be applied is whether or not in a particular case and bonded project there is a reasonable and good faith expectation by the supplier at the time of delivery that the materials under all the circumstances would be substantially used up in the project under way. If so, the surety is liable." (224 F. Supp. at 409) The Second Circuit, in *Fire Association of Philadelphia*, supra, set forth two reasons which persuade us that once again the federal courts have adopted a sounder posi-

tion than that espoused by National. First, if this burden is placed on the supplier, he would be faced with an almost insurmountable task of tracing each and every item he sold even after the items had clearly left his control. Second, one of the purposes of surety bonds is to enhance the contractor's ability to secure credit for needed materials. The position advocated by National would frustrate this policy, because the supplier would be reluctant to extend credit if the surety's liability will not attach until such time as the goods have actually been consumed (260 F. 2d at 545). See also: *Boyd Callan, Inc. v. United States ex rel. Steves Industries, Inc.*, 328 F. 2d 505, 510, 511 (5th Cir. 1964); *United States ex rel. Westinghouse Elec. Supply Co. v. Enderbrock-White Co.*, 275 F. 2d 57, 60 (4th Cir. 1960). We believe the position adopted by the federal courts is sound and, as a result, find no error in the trial court's charge.

National's third contention is that its position as surety was jeopardized because Walters continued to make sales to Indyk over a twenty-month period although at no time did Indyk tender payment for any of the items received; National, therefore, contends that these sales were not within Walters' regular course of business. Once again, National's position, if adopted by this Court, would jeopardize the usefulness of surety bonds, for suppliers would be reluctant to extend credit if the surety were able to escape liability by making the argument now advanced by National. Furthermore, there is a simple solution to this problem: the surety can require that a provision be inserted in the bond requiring that it be notified if payment for items is not tendered within a certain length of time after purchase. Cf. *Commonwealth ex rel. Fort Pitt Bridge Works v. Continental Cas. Co.*, 429 Pa. 366, 370, 240 A. 2d 493 (1968).

National's fourth argument is that it should be given credit for a $75,000 note Indyk gave to Walters. National points out that Walters' president testified that General Tire and Rubber Company agreed to accept this note and *payments thereon* as payment for materials supplied to Walters for the Indyk contract. There is no evidence that any payments were ever made on this note, and, therefore, National should receive no credit for the note.

The fifth argument advanced by National is that the court below committed error in molding the jury's verdicts to add interest when the question of interest had never been submitted to the jury. Neither party objects to the lower court's ruling that, under our decision in *Fort Pitt Bridge Works*, supra, interest should be included in the judgment (429 Pa. at 369, 370). We have held that a verdict may be molded, even by an appellate court, to add interest where it is owing. *Peyton v. Margiotti*, 398 Pa. 86, 95, 156 A. 2d 865 (1959). Moreover, we are of the view that the trial court was correct in not submitting the question of interest to the jury. This was an extremely complicated case for the jury. They were asked to consider 130 invoices submitted into evidence by Walters and to arrive at a verdict on each invoice. To require the jury also to calculate interest on each invoice in which they awarded a verdict would have further complicated the case. After the jury returned with its verdicts, attorneys for both parties computed the interest. There is no allegation that the figure arrived at is incorrect. Therefore, since, in light of our opinion in *Fort Pitt Bridge Works*, supra, computation of interest was merely a mathematical problem, the court was correct in not further complicating the jury's deliberations by submitting the question of interest.

National's final argument is that the trial court committed reversible error in not submitting to the

jury the question whether National's penalty bond had not already been exhausted in one of the projects. After studying the record, we are convinced that the trial court ruled correctly that National's evidence that the bond had been exhausted was insufficient to warrant submitting the question to the jury. All but one of the expenditures which National claims exhausted the bond were made after National took over the project and were incurred so that National would not have to forfeit its performance bond. The trial court ruled —in our estimation correctly—that National had arbitrarily and gratuitously assigned these expenses to the labor and material bond instead of to the performance bond. Under these circumstances, we hold that the trial court was correct in withdrawing this issue from the jury's consideration.

Judgments affirmed.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that the judgments of the court below should be affirmed, but I believe that additional discussion of the jury charge is appropriate.

The court below charged that the tires in question were within the coverage of the bond if at the time of the sale and delivery Walters "reasonably and in good faith expected that they would be substantially used up on the job . . . ." This charge required the jury to utilize an *objective test* in determining the coverage of the bond. Although Walter's belief, of course, had to be in good faith, it also had to be *reasonable,* and thus the mere fact that Walters *actually* believed that the tires would be used up during the job would not suffice. Thus Walters could not prevail simply by testifying that he believed that the tires would be consumed during the job; it was still for the jury to decide whether that belief was a reasonable one. Just

as it utilizes a "reasonable man" test in a negligence case, the jury here was to decide whether the objective, fictional, reasonable man—*not Walters himself*—could in good faith have believed that the tires would be consumed on this job.

What prompts my concern is the fear that the jury could become confused and believe that the controlling test is the mental state of the seller involved. While I agree that the charge given here was legally sound, and while I see no indication of confusion or prejudice in this case, I believe it might be wiser for trial courts to phrase the charge to read "if a reasonable person would believe" rather than "if Walters would reasonably believe." The requirement of good faith goes, of course, to the mental state of the party himself, but it would seem wise to make sure that the jury understands that the standard of reasonableness does not.

Mr. Justice POMEROY joins in this concurring opinion.