LITE–AIR PRODUCTS, INC.

v.

FIDELITY & DEPOSIT CO.
OF MARYLAND

v.

ALLENTOWN SUPPLY CORP.

Civ. A. No. 76–140.

United States District Court,
E. D. Pennsylvania.

Aug. 11, 1977.

Ronald E. Robinson, Lansdale, Pa., for plaintiff.

Christopher K. Walters, Philadelphia, Pa., for Fidelity.

David Freeman, Philadelphia, for Allentown.

## MEMORANDUM

NEWCOMER, District Judge.

The plaintiff, Lite-Air Products, Inc. ("Lite-Air") was a subcontractor on an airport project on which Allentown Supply Corporation ("Allentown Supply") was the general contractor. Lite-Air contracted to supply the material and provide installation for hearing, ventilating, and air-conditioning equipment. The defendant Fidelity and Deposit Company of Maryland ("Fidelity") entered into a Payment Bond on behalf of Allentown Supply, as the principal. Lite-Air claims that Allentown Supply did not pay plaintiff for the material and labor supplied, for interest charges on the delay in payment, and for changes and cancellation of orders. Plaintiff brought the original action to recover these unpaid amounts from the defendant surety company, pursuant to the "Public Works Contractor's" Bond Law of 1967, 8 P.S. § 191 *et seq.* Fidelity subsequently joined Allentown Supply as a third-party defendant. Presently before the Court is a motion, made by Fidelity, for a partial summary judgment against the plaintiff.

In its motion, Fidelity contends that some of the items claimed by Lite-Air are not recoverable under the terms of the payment bond or under the statute. The items in dispute are:

1) the future lost profits totalling $6,485., due to the cancellation of two purchase orders;

2) a "cancellation charge" of $1,102.40 because defendant's principal cancelled a previous order;

3) claims totalling $5,417.68 for alleged damages caused by supposed delay of the prime contractor on others;

4) "finance changes" for items # 1, 2, and 3; and

5) "finance charges" of $5,946.16 for invoices which have been fully paid.

I find that all of these claims should be dismissed and defendant's motion granted.

■ The issues raised by defendant's motion depend on the scope of the surety's liability under the bond and the statute. The bond is the proper place to start because the true intent and meaning of the instrument are the primary determinants of the extent of liability. *Monongahela Street Railway Co. v. Phila. Co.,* 350 Pa. 603, 39 A.2d 909 (1944). Any interpretation that is required should be done with the purpose of constructing the intent from all of the words and clauses used and taken as a whole, with due regard to the surrounding circumstances. *Siata International U.S.A., Inc. v. Insurance Company of North America,* 362 F.Supp. 1355 (E.D.Pa.1973), *rev'd on other grounds,* 498 F.2d 817 (3rd Cir. 1974).

■ The plaintiff relies on the following language in the surety bond,

"Now, therefore, the terms and conditions of the bond are and shall be that if the principal to whom any portion of the work under this contract shall be subcontracted and if all assignees of the principal and of any such subcontractor promptly shall pay or cause to *be paid in full all money which may be due any claimant, supplying labor or materials in the prosecution and performance of the work* in accordance with the contract documents, . . . this bond shall be voided, otherwise this bond shall be and

shall. remain in full force and effect."
(Emphasis supplied in plaintiff's memorandum).

Lite-Air's contention is that through this language Fidelity is liable for all of the monies due from the principal, Allentown Supply. The plaintiff claims that the surety assumed obligations which were co-extensive with those of Allentown Supply. I find that this is an inappropriate interpretation of the bond. First, the plaintiff's interpretation improperly depends on the isolation of one clause from the context of the sentence and paragraph. In fact, a closer look at the paragraph which the plaintiff has relied on reveals that this section only sets out a condition of the surety's liability and not the scope of that liability.

The applicable language in the bond for determining the scope of surety's liability is set out as follows:

".  .  . [the claimant] may institute an action upon this Bond, in the name of the claimant, in assumpsit, *to recover the amount due the claimant for such labor or material*, and may prosecute such action to final judgment and may have execution upon the judgment." (Emphasis added).

The key words show that Fidelity is liable only for the amount due for labor and materials. The issue is focused on what is included in "labor and materials."

■ The operative language of the bond is very similar to the statutory language which regulates this matter—the Public Works Contractor's Bond Law of 1967.[1] Since the language is similar to the statute, the cases interpreting the requirements under the statute will determine the scope of liability under the bond.

■ Besides the Pennsylvania court decisions, another supplementary source of interpretation has been the Miller Act. The Miller Act was enacted by Congress to provide protection for those supplying labor and materials for federal government construction. The Pennsylvania courts have found that analogizing and following Miller Act decisions is useful because of the similarity of purpose between that Act and Pennsylvania law. The logic used in interpreting the Miller Act is easily and appropriately transferred to the Pennsylvania statute. *Commonwealth to use Walters Tire Service, Inc. v. National Union Fire Insurance Co.*, 434 Pa. 235, 252 A.2d 593 (1969). Thus Pennsylvania and Federal case law will provide the basis for determining if plaintiff's claims are covered by the principal's surety bond with Fidelity.

■ The first claim disputed by the defendant is for loss of future profits, that is profits expected by Lite-Air on items that were never delivered. The Courts have stated that compensation for work that has not been done cannot be recovered under a surety bond. *Miller v. Commercial Electric Construction, Inc.*, 223 Pa.Super. 216, 297 A.2d 487 (1972). The reason for this rule is that the purpose of the surety bond is to protect those whose actual work or expenditures on material have enhanced the value of the property in question. *Arthur N. Olive Co. v. United States*, 297 F.2d 70 (1st Cir. 1961). Here the claim for lost profits involves items that not only were never delivered but also were never even purchased by Lite-Air. Therefore, I find that the future profits should not be included in the amount recoverable from Fidelity as due for labor and materials.

The second claim is a "cancellation charge" for orders which were cancelled by Allentown Supply. This charge is also a claim which arose because goods were not delivered to Allentown Supply. Consequently, for the same reasons that the claim for lost profits must be dismissed, the cancellation charge cannot be recovered from the surety.

---

1. 8 P.S. § 194 provides as follows:

"(a) Subject to the provisions of subsection (b) hereof, any claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given .  ., may bring any action on such payment bond in his own name, in assumpsit, *to recover any amount due for such labor or material*, and may prosecute such action to final judgment and have execution on the judgment." (Emphasis added).

The delay damages claimed by the plaintiff are for the escalated material costs which allegedly were caused by the delay of the prime contractor, Allentown Supply, or others. A similar claim was discussed by the Court in *United States v. Guy H. James Construction Co.*, 390 F.Supp. 1193 (M.D. Tenn.1972), aff'd., 489 F.2d 756 (6th Cir. 1973). The Court there was concerned that damages for breach of contract not be considered as part of the value of the furnished materials and labor. It found that delay damages should not be considered an indispensable cost; and as long as there is no intention specified in the bond, the surety is not liable for the damages caused by the negligence of the principal in causing a delay.[2] Since there is no evidence of any intention to hold Fidelity liable for such damages, this item also will be dismissed.

The fourth claim, finance charges on the first three claims, is automatically dismissed because the claims themselves were dismissed. Where the surety is not responsible for the underlying debt, it cannot be responsible for finance charges or interest on that debt.

The last claim is for "finance charges" on invoices which were fully paid, although they were paid late. I find that this claim must also be dismissed for not being a properly included item under "labor and materials." First this claim is not an indispensable cost for labor or materials which added value to the building project. Rather, the claim for finance charges is in the nature of a penalty, and therefore would more appropriately be classified as damages than as part of the value of the materials. In addition, there is no language in the bond from which the court could find that the parties intended the surety to be liable for this charge.

Of course, the dismissal of this claim does not preclude holding Fidelity liable for judgment interest. The surety is liable, under the terms of the bond and the law, for interest on all the claims that it must pay.

Since none of the disputed items of damages is an "amount due for labor and materials," as required by the surety agreement, the surety cannot be liable for these items and Fidelity's motion is granted.

---

2. The claim made by Lite-Air is in fact broader than that rejected by the Sixth Circuit. Lite-Air claims that not only should Fidelity be liable for their principal's negligence but also for delays caused by others. Clearly, the surety's obligation does not extend further than that of the principal, and where the principal did not cause the delay the surety cannot be liable. *Toth v. Connelly*, 116 P.L.J. 237 (1968).