# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Widmer Engineering, Inc.,        :
                Appellant       :
                              :
           v.               :    No. 257 C.D. 2016
                              :    Argued: December 12, 2016
Five-R Excavating, Inc. and The  :
Pennsylvania National Mutual    :
Casualty Insurance Company, Inc.  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: March 13, 2017**

Widmer Engineering, Inc. (Widmer) appeals from the April 4, 2013 Order of the Court of Common Pleas of Beaver County (common pleas) that granted the preliminary objection (PO) filed by The Pennsylvania National Mutual Casualty Insurance Company, Inc. (Penn National) to Widmer's Amended Complaint and dismissed the Amended Complaint as to Penn National based on its prior denial of Widmer's Motion for Partial Summary Judgment (Motion).[1] In this action,

---

[1] The April 4, 2013 Order did not become a final, appealable order until September 4, 2015, when common pleas entered an order disposing of all of the parties and claims related to Widmer's action. Moreover, the April 4, 2013 Order specifically referenced and relied upon common pleas' October 5, 2012 Order denying the Motion as being the law-of-the case.

Widmer sought payment under a payment bond (Bond) purchased by Five-R Excavating, Inc. (Five-R) from Penn National for construction work Five-R performed for the Commonwealth of Pennsylvania (Commonwealth). On appeal, Widmer argues that common pleas erred in concluding that neither Section 3(a)(2) of the Public Works Contractors' Bond Law of 1967[2] (Bond Law) nor the language of the Bond itself entitled Widmer to payment under the Bond for the professional engineering services it provided to Five-R. Discerning no error of law or abuse of discretion, we affirm.

---

[2] Act of December 20, 1967, P.L. 869, as amended, 8 P.S. § 193(a)(2). Section 3(a)(2) requires that:

> (a) Before any contract exceeding five thousand dollars ($5,000) for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor:
>
> ***
>
> (2) A payment bond at one hundred percent of the contract amount. Such bond shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work. "Labor or materials" shall include public utility services and reasonable rentals of equipment, but only for periods when the equipment rented is actually used at the site.

8 P.S. § 193(a)(2). The Bond Law was repealed as to Commonwealth agencies per Section 6(b) of the Act of May 15, 1998, P.L. 358. The Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. §§ 101-2311, as amended, now applies to such contracts, and Section 903(a) of the Procurement Code contains substantially similar language for the bonds required for construction contracts with the Commonwealth. 62 Pa. C.S. § 903(a). Nevertheless, the Bond here directly incorporates the Bond Law as governing its terms.

## I. Background

The relevant facts are not in dispute. Widmer is a professional engineering firm. In order to bid for a design/build contract with the Pennsylvania Department of Transportation (PennDOT) for the replacement of culverts and bridges in Westmoreland County (Project), Five-R entered into a contract with Widmer for the engineering services necessary for the Project. PennDOT awarded the design/build contract to Five-R, who agreed to serve as a general contractor and to provide and procure all of the necessary design and engineering services for the Project. As required by PennDOT and the Bond Law,[3] Five-R, as principal, obtained the Bond from Penn National to cover 100% of the contract price of $3,905,583.21. Widmer began providing services under its contract with Five-R and billed Five-R for those services. Eventually, Widmer suspended its performance of that contract due to Five-R's alleged failure to pay Widmer the amounts billed.[4] Widmer then sought payment from Penn National under the Bond, but Penn National would not pay.

Widmer filed a complaint against both Five-R and Penn National, alleging that: (1) Five-R breached its contract with Widmer by failing to pay the amounts due and owing for Widmer's professional services; and (2) Penn National breached its obligations under the Bond by not issuing payment to Widmer when requested. Widmer filed the Motion, arguing that the professional engineering services it provided under its contract with Five-R constituted "labor" as used in Section 3(a)(2) of the Bond Law and, thus, were guaranteed by the Bond.

---

[3] Section 903(a) of the Procurement Code also requires a payment bond for certain construction projects. 62 Pa. C.S. § 903(a).

[4] Five-R disputed whether Widmer fully complied with the contract and contended that it owed Widmer nothing more than that which it had already paid.

Observing that this involved a matter of contract interpretation, common pleas first reviewed the Bond's language, noting that if the language therein was similar to the language in the Bond Law, the Bond should be interpreted identically to the Bond Law. (Common pleas op., Oct. 5, 2012 (October 2012 Op.) at 3 (citing Lite-Air Prod., Inc. v. Fid. & Deposit Co. of Maryland, 437 F. Supp. 801, 803 (D.C. Pa. 1977)).) The relevant language of the Bond is as follows:

> The conditions of this obligation is [sic] such that if the above bounden PRINCIPAL (Five-R) shall and will promptly or cause to be paid in full all sums of money which may be due by contractor or corporation, for all materials furnished or *labor supplied or performed* in the prosecution of the work, whether or not said material or labor entered into and became component parts of the work or improvements contemplated . . . then this obligation to be void, otherwise to remain in full force and effect . . . . The PRINCIPAL and SURETY hereby, jointly and severally, agree with the obligee herein that any individual, firm, partnership, association or corporation, which has performed *labor* or furnished material in the prosecution of the work . . . and which has not been paid in full therefor, may sue in assumpsit on this Payment Bond . . . and may prosecute the same to final judgement [sic] for such sum or sums.

(R.R. at 23a (emphasis added).) This language, common pleas held, is very similar to that in Section 3(a)(2) of the Bond Law, with both focusing on the term "labor." (October 2012 Op. at 3.) Concluding that there is no controlling Pennsylvania precedent on the definition of "labor" as used in the Bond Law, common pleas examined how the term has been interpreted in what it concluded to be analogous statutes, the Federal Miller Act (Miller Act)[5] and Pennsylvania's Mechanics' Lien Law of 1963[6] (Mechanics' Lien Law).

---

[5] The Miller Act governs contracts over $100,000 for the construction, alteration or repair of a public building or public work for the Federal Government, and requires the contractor to **(Footnote continued on next page…)**

Based on its review of those statutes and various state and federal courts' interpretations of them, common pleas concluded that Widmer was not entitled to payment under the Bond Law or the Bond itself for its professional design services. (Id. at 6.) However, common pleas noted that the Bond was for the entire amount of Five-R's contract with PennDOT, which included the design work, and questioned, therefore, whether Penn National "could have assumed and/or intended this work to also be guaranteed by its [B]ond" and that an exception could be made to the interpretation of the term "labor" under the Bond. (Id. at 6-7.) Notwithstanding its query, common pleas held that it was compelled to deny the Motion because there was no statutory authority or appellate precedent for extending the Bond to include professional services as "labor." (Id. at 7.) Widmer subsequently filed the Amended Complaint, which, in relevant part, reiterated the same count against Penn National. Penn National filed a demurrer based on common pleas' denial of the Motion, which common pleas granted. Accordingly, common pleas dismissed Widmer's breach of the Bond count against

---

(continued…)

furnish performance and payment bonds to the Government. Section 3131(a) of the Miller Act, 40 U.S.C. § 3131(a). Section 3131(b)(2) requires the following bond to be provided:

> A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of the contract unless the officer awarding the contract determines, in a writing supported by specific findings, that a payment bond in that amount is impractical, in which case the contracting officer shall set the amount of the payment bond. The amount of the payment bond shall not be less than the amount of the performance bond.

40 U.S.C. § 3131(b)(2).

[6] Act of August 24, 1963, P.L. 1175, as amended, 49 P.S. §§ 1301-1902.

Penn National based on the law-of-the-case doctrine. (Common pleas op. and order, Apr. 4, 2013.) Widmer now appeals to this Court.[7, 8]

---

[7] Widmer subsequently moved for summary judgment against Five-R. Common pleas entered judgment in Widmer's favor for $872,988.92 in damages. (Common pleas ops. and orders, Mar. 25, 2015 and Sept. 4, 2015.) Widmer and Five-R appealed to Superior Court from common pleas' respective orders against them, which that Court consolidated. On Widmer's application, Superior Court transferred the consolidated cross-appeals to this Court, which were given two docket numbers. The appeal at Docket Number 257 is Widmer's appeal from common pleas' dismissal of the breach of payment bond count against Penn National. A second appeal, at Docket Number 258, is Five-R's appeal from common pleas' judgment in favor of Widmer. The appeals were consolidated, and Five-R was designated as the appellant pursuant to Rule 2136 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 2136. Five-R filed a suggestion of bankruptcy on May 9, 2016, stating that it filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-1174, on February 25, 2016. On May 17, 2016, this Court issued an order, staying the briefing schedule for the consolidated appeals pending further order. Widmer filed an Application on May 23, 2016, seeking to lift the stay in its appeal against Penn National. By single judge memorandum opinion and order, this Court lifted the stay in Widmer's appeal against Penn National. Widmer Engineering, Inc. v. Five-R Excavating, Inc. (Pa. Cmwlth., Nos. 257, 258 C.D. 2016, filed Aug. 4, 2016).

[8] Our review of common pleas' "order sustaining [POs] and dismissing a complaint is limited to a determination of whether that court abused its discretion or committed an error of law." Petty v. Hosp. Serv. Ass'n of Ne. Pa., 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009). "An appellate court should affirm an order of [common pleas] . . . sustaining [POs] in the nature of a demurrer where, when all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts are accepted as true, the plaintiff is not entitled to relief." Stilp v. Gen. Assembly, 940 A.2d 1227, 1232 n.9 (Pa. 2007). Our review of common pleas' grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. Smith v. Twp. of Richmond, 54 A.3d 404, 407 n.3 (Pa. Cmwlth. 2012). "Summary judgment is appropriate only if 'there is no genuine issue of any material fact as to a necessary element of the cause of action.'" Id. (quoting Rule 1035.2(1) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1035.2(1)). Thus, summary judgment "may be entered only when, after examining the record in the light most favorable to the non-moving party and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law." Id.

## II. Parties' Arguments on Appeal

*A. Whether common pleas erred in holding that Widmer's professional engineering services are excluded from coverage under the Bond Law.*

Section 3(a)(2) of the Bond Law provides, in relevant part, that the required payment bond:

> shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work.

8 P.S. § 193(a)(2). Section 4(a) of the Bond Law provides, in pertinent part:

> (a) Subject to the provisions of subsection (b) [(related to claimants who have a contract with a subcontractor of the prime contractor)] hereof, any claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given pursuant . . . and who has not been paid in full therefor before the expiration of ninety days after the day on which such claimant performed the last of such labor or furnished the last of such materials for which he claims payments, may bring an action on such payment bond or other financial security in his own name, in assumpsit, to recover any amount due him for such labor or material, and may prosecute such action to final judgment and have execution on the judgment.

8 P.S. § 194(a). The Bond Law does not define the term "labor" but does define a "claimant" as "includ[ing] any individual, firm, partnership, association or corporation." Section 2 of the Bond Law, 8 P.S. § 192. The payment bond must be "one hundred percent of the contract amount." 8 P.S. § 193. We note that the Bond Law was repealed as to Commonwealth agencies per Section 6(b) of the Act of May 15, 1998, P.L. 358, and was replaced by the Commonwealth Procurement

7

Code[9] (Procurement Code). While Section 903(a) of the Procurement Code contains substantially similar language for the bonds required for construction contracts with Commonwealth agencies, 62 Pa. C.S. § 903(a), the Bond specifically provides that "[r]ecovery by any . . . firm . . . hereunder shall be subject to the provisions of the "Public Works Contractors' Bond Law of 1967" . . . which Act shall be incorporated herein and made a part hereof, as fully and completely as though its provisions were fully and at length herein recited." (R.R. 064a.) Accordingly, the parties agreed that we apply the Bond Law's provisions in this matter.

Widmer first argues that common pleas erred in relying on interpretations of the Mechanics' Lien Law and the Miller Act to conclude that the professional engineering services it provided to Five-R for the Project are not "labor" for the purposes of Section 3(a)(2) of the Bond Law. In particular, Widmer contends that there are differences between the language of the Mechanics' Lien Law and the Bond Law, which were not considered by common pleas. For example, Widmer points out that professional engineering services are not excluded from the Mechanics' Lien Law under its definition of "labor," but rather under its definition of "contractor" and "subcontractor," Section 201(4), (5), and (9) of the Mechanics' Lien Law, 49 P.S. § 1201(4), (5), (9), and there is no equivalent exclusion expressed in the Bond Law. Widmer also asserts that the Bond Law's definition of "claimant," a term used in Section 3(a)(2) of the Bond Law to describe who is protected by a payment bond, does not exclude architects and engineers. Widmer further argues that its interpretation of the Bond Law finds support in the Procurement Code. The Procurement Code, like the Bond Law, does not define

_____
[9] 62 Pa. C.S. §§ 101-2311, as amended.

8

"labor," contains similar language requiring payment bonds provide 100% coverage of the contract price, and does not expressly exclude the professional services of architects and engineers, despite authorizing Commonwealth agencies to enter into "design/build" contracts that necessarily require the use of such services.[10] Sections 103, 322(2), and 903(a)(2) of the Procurement Code, 62 Pa. C.S. §§ 103, 322(2), 903(a)(2).[11]

As for the Miller Act, Widmer argues that the case law interpreting that law is not binding on this Court and that the language in the Miller Act is narrower than that in the Bond Law. For example, Widmer asserts that Section 3133(a) of

---

[10] Widmer asserted initially to this Court that this matter was governed by the Procurement Code, an assertion that Penn National argued Widmer waived, having not raised it before common pleas. However, Widmer subsequently clarified its position, indicating that it was relying on the Procurement Code, not to advance a new theory of recovery, but to support the arguments it made before common pleas that the General Assembly did not intend, in the Bond Law, to exclude professional engineering services from the protection of payment bonds.

[11] Section 103 of the Procurement Code sets forth definitions but does not include a definition for "labor." Section 322(2) of the Procurement Code provides that a "department may . . . enter into a design/build contract in accordance with [S]ection 511 (relating to methods of source selection)." 62 Pa. C.S. § 322(2). Section 903(a)(2) addresses payment bonds and, in pertinent part provides:

> **(a) When required and amounts.--** . . . . When a construction contract is awarded in excess of $100,000, the following bonds shall be delivered to the purchasing agency and shall be binding on the parties upon the execution of the contract:
>
> * * *
>
> (2) A payment bond, executed by a surety company authorized to do business in this Commonwealth and made payable to the Commonwealth, in an amount equal to 100% of the price specified in the contract and conditioned upon the prompt payment for all materials furnished or *labor supplied or performed in the prosecution of the work*. Labor or materials include public utility services and reasonable rentals of equipment for the periods when the equipment is actually used at the site.

62 Pa. C.S. § 903(a)(2) (emphasis added).

9

the Miller Act, 40 U.S.C. § 3133(a), appears to limit bond coverage only to those who have "supplied labor or material for work described in the contract," but the Bond Law and the Procurement Code contain broader language indicating that the payment bond covers work that does not become a part of the final project. Section 5 of the Bond Law, 8 P.S. § 195; Section 903(b) of the Procurement Code, 62 Pa. C.S. § 903(b).[12]

Penn National responds that while neither the Bond nor the Bond Law define the term "labor," this term has been consistently interpreted in the context of payment bonds and mechanics' liens as excluding professional engineering services like those provided by Widmer to Five-R. Instead, the term "labor" has been defined to include "[only] physical labor rather than technical and professional skill and judgment" or a "skilled" professional "who actually superintends the work as it is done." United States v. W.H. Cates Constr. Co., 972 F.2d 987, 990 (8th Cir. 1992). Penn National asserts that the scope of the Bond Law is to be no greater than the Mechanics' Lien Law, and that engineers are not entitled to a lien under the latter act for their services unless they have provided

---

[12] Section 5 of the Bond Law provides that the Bond Law "shall apply whether or not the material furnished or labor performed enters into and becomes a component part of the public building or other public work or public improvement, including highway work." 8 P.S. § 195. Section 903(b) of the Procurement Code, states:

> A performance bond shall be solely for the protection of the purchasing agency which awarded the contract. A payment bond shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded or to any of its subcontractors in the prosecution of the work provided for in the contract, whether or not the labor or materials constitute a component part of the construction.

62 Pa. C.S. § 903(b).

superintendent or supervision services.[13]   Penn National argues that, although Widmer attempts to support its position by referencing the Procurement Code, the result is the same under either law because the relevant provisions of the Bond Law (Sections 3(a)(2), 4) and the Procurement Code (Section 903(a), (d)[14]) contain nearly identical language, demonstrating that the General Assembly intended the payment bond provisions of each law to be the same.  Moreover, the Procurement Code's authorization of design/build contracts does not extend the scope of the payment bonds issued under that law, which corresponds with the Bond Law's provisions limiting payment to those who furnish materials or provide or supply labor, but did not expand coverage to professional engineering services.

With regard to the Miller Act, Penn National argues that courts have rejected the argument that the Miller Act is narrower than the Bond Law and have held that

---

[13] Penn National notes that the General Assembly recognizes that professional design services of architects and engineers are not covered by the Mechanics' Lien Law and amendments to the Mechanics' Lien Law have been proposed, but not passed, to change this exclusion.  Widmer replies that this supports its position that the definition of "labor" does not exclude professional design services because the amendments did not attempt to alter that definition, only the definition of "contractor" and "subcontractor."

[14] Subsection (d)(1) of Section 903 of the Procurement Code governs actions on payment bonds and provides, in relevant part:

> (1) Subject to paragraph (2) [(not applicable here)], any claimant who has *performed labor* or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given under subsection (a) and who has not been paid in full before the expiration of 90 days after the day on which the claimant *performed the last of the labor* or furnished the last of the materials for which it claims payments may bring an action on the payment bond in its own name, in assumpsit, to recover any amount due it for the labor or material and may prosecute the action to final judgment and have execution on the judgment.

62 Pa. C.S. § 903(d)(1) (emphasis added).

11

the Miller Act serves the same purpose and function as the Bond Law. Nicholson Constr. Co. v. Standard Fire Ins. Co., 760 F.2d 74, 77 (3d Cir. 1985); Lite-Air Prods., Inc., 437 F. Supp. at 803. It contends the Pennsylvania Supreme Court has relied upon interpretations of the Miller Act to determine the proper construction of the Bond Law, and this Court should do the same. Com. to Use of Walters Tire Serv., Inc. v. Nat'l Union Fire Ins. Co., 252 A.2d 593, 595 (Pa. 1969).

Having set forth the parties' arguments, we commence our review. The Bond Law has been found to serve two main purposes: (1) "it is designed to protect the contracting body by assuring faithful performance of the contract"; and (2) it "provides a substitute remedy for subcontractors who supply labor and materials and who are excluded from the protections afforded by" Section 303 of the Mechanics' Lien Law (which does not apply to public projects).[15] Berks Prods. Corp. v. Arch Ins., Co., 72 A.3d 315, 322 (Pa. Cmwlth. 2013); Valley Forge Indus., Inc. v. Armand Constr., Inc., 374 A.2d 1312, 1315 (Pa. Super. 1977); Nicholson Constr. Co., 760 F.2d at 77 (the Bond Law is "to provide a substitute remedy for municipal contractors who are denied the right to impose a mechanic's lien").

There are no cases that have specifically examined what "labor" means in the Bond Law. Common pleas is correct that, when interpreting the Bond Law, courts have looked to other comparable statutes for assistance, specifically the Mechanics' Lien Law and the federal analogue to the Bond Law, the Miller Act. See, e.g., Can-Tex Indus. v. Safeco Ins. Co. of America, 460 F. Supp. 1022, 1024-25 (W.D. Pa. 1978) (citing Valley Forge Indus., Inc., 374 A.2d at 1315) (scope of

---

[15] Pursuant to Section 303(b) of the Mechanics' Lien Law, no mechanics' "lien shall be allowed for labor or materials furnished for a purely public purpose." 49 P.S. § 1303(b).

12

the Bond Law is "intended to be no greater than that of the Mechanics' Lien Law"); Beckwith Mach. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 890 A.2d 403, 407 n.6 (Pa. Super. 2005) (citing Walters Tire Serv., Inc., 252 A.2d at 595) (Bond Law is Pennsylvania's version of the Miller Act).

The Mechanics' Lien Law defines "labor" as "includ[ing] the furnishing of skill or superintendence" and authorizes, with few exceptions, a subcontractor to file a lien for labor furnished against "every improvement . . . or title of the owner in the property . . . for the payment of all debts due by the . . . contractor to any of his subcontractors . . . ." Sections 201(9), 301(a) of the Mechanics' Lien Law, 49 P.S. §§ 1201(9), 1301(a). Here, Widmer was a subcontractor of Five-R, and the Mechanics' Lien Law defines "subcontractor" specifically *not* to include "an architect or engineer who contracts with a contractor or subcontractor." 49 P.S. § 1201(5) (emphasis added).[16] However, the term "contractor" is defined as "includ[ing] an architect or engineer who, *by contract with the owner*, express or implied, in addition to the preparation of drawings, specifications and contract documents also superintends or supervises any such erection, construction,

---

[16] The full definition of "subcontractor" provides:

one who, by contract with the contractor, or pursuant to a contract with a subcontractor in direct privity of a contract with a contractor, express or implied, erects, constructs, alters or repairs an improvement or any part thereof; or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or all of the foregoing, whether as superintendent, builder or materialman. *The term does not include an architect or engineer who contracts with a contractor or subcontractor*, or a person who contracts with a materialman or a person who contracts with a subcontractor not in direct privity of a contract with a contractor.

49 P.S. § 1201(5) (emphasis added).

alteration or repair." 49 P.S. § 1201(4) (emphasis added). It is this supervision that is considered to entail physical labor. Stratford v. Boland, 452 A.2d 824, 825-26 (Pa. Super. 1982). Therefore, states' mechanics' lien statutes, and the Miller Act, generally used the term "labor" to refer "to physical labor rather than technical and professional skill and judgment . . . ." W.H. Cates Constr. Co., 972 F.2d at 990.

Similar interpretations have been applied since at least 1860, when the Pennsylvania Supreme Court in The Bank of Pennsylvania v. Gries, 35 Pa. 423, 425 (1860) (emphasis added), considered "not only who are entitled to the benefits of [a mechanics' lien], but *what kind of services* are within its protection." In Gries, the plaintiff was designated in a construction contract as an architect, but also was "a mechanic" as "eviden[ced] from the requirement not only to draw the plans of the work to be done, but the duty of explaining and directing its proper execution." Id. The Court explained that:

> This [supervisory] . . . work [is] often done by the master-mechanic, and is as essential to the due construction of a building as is the purely mechanical part; for without it, shape, symmetry, and proportion would be wanting: elements, not of beauty alone, but of strength and convenience, in every superstructure. To preserve these elements, some architectural skill is required, but is generally exercised, in ordinary buildings, by a mere mechanic by occupation. This would certainly not impair his right to a lien as such mechanic. *A mere naked architect, . . . who may be such without being an operative mechanic, who draws plans in anticipation of buildings usually, to enable the builder to determine the kind he will erect, could hardly be supposed to be within the act which provides a lien for work "done for or about the erection or construction of the building."* But very distinguishable from this, is the case of a party employed to devote his entire time to a building, and who draws the plans for every part of the work, and directs its execution according to such plans and specifications. *This is labo[]r--mechanical labo[]r of a high order--*

14

contributing its proportionate value to the beauty, strength, and convenience of the edifice.

Id. at 425-26 (emphasis added). Thus, the Court concluded,

where a party, although denominated an architect, as here, is under employment by the owner or contractor of a building, and devotes his time in making plans and drawings of the work to be done, *and in directing and overseeing its execution* in accordance therewith, he is within the statute, and entitled to file a lien for his labo[]r . . . .

Id. at 426 (emphasis added). See also Alan Porter Lee, Inc. v. Du-Rite Prods. Co., 79 A.2d 218, 219 (Pa. 1951) (concluding that architects were prohibited from maintaining a lien for "drawing plans and specifications for the [project]"); Dyer v. Wallace, 107 A. 754, 755 (Pa. 1919) (holding that "[t]he services of an architect in preparing plans cannot be made the subject of a mechanic's lien . . . except in connection with other services rendered in the construction of the building"); Price v. Kirk, 90 Pa. 47, 48 (Pa. 1879) (concluding that an architect's "labor and services" that went into making the drawings, plans, specification and in directing and overseeing that work did not entitle the architect to a mechanics' lien).

Similar to the Bond Law, the Miller Act authorizes a person who "has furnished labor . . . in carrying out work" on a public construction contract to "bring a civil action on the payment bond for [an] amount unpaid at the time the civil action is brought." 40 U.S.C. § 3133(b). In United States v. Butt & Head, Inc., 535 F. Supp. 1155, 1157 (S.D. Oh. 1982),[17] the Southern District Court of Ohio observed that the Miller Act was "designed to provide an analogue to mechanic's liens utilized in private construction projects." It further held that

_____

[17] We are not bound by decisions of lower federal courts, but such decisions may be given persuasive effect. In re Stevenson, 40 A.3d 1212, 1221 (Pa. 2012).

15

"[a]lthough intended to be remedial in nature and liberally construed, the [Miller] Act is not to be applied so as to impose wholesale liability on payment bonds." Id. at 1157-58 (citations omitted). The Miller Act does not define labor; however, the phrase "furnish[ing] labor," 40 U.S.C. §§ 3131, 3133(b), has been construed to "refer[] to physical labor rather than technical and professional skill and judgment" although it may include an "architect or other skilled man who actually superintends the work as it is done." W.H. Cates Constr. Co., 972 F.2d at 990 (quoting United States v. Shea-Adamson Co., 21 F. Supp. 831, 837 (D. Minn. 1937) (interpreting the predecessor to the Miller Act) (internal quotations omitted)); see also Tri-State Employ. Servs., Inc. v. Mountbatten Sur. Co., Inc., 295 F.3d 256, 266 (2d Cir. 2002) (stating that "only those providing *physical* labor, rather than technical and professional skill, are intended beneficiaries of payment bonds") (emphasis added); Butt & Head, Inc., 535 F. Supp. at 1158 (stating that "labor" includes "physical toil, but not work by a professional, such as an architect or engineer" unless that professional "actually superintends the work as it is done on the job site"); Nat'l State Bank of Newark v. Terminal Constr. Corp., 217 F. Supp. 341, 361 (D. N.J. 1963) (quoting Shea-Adamson Co. for the same proposition as W.H. Cates Constr. Co.), aff'd, 328 F.2d 315 (3d Cir. 1964) (per curiam).

Widmer raises some interesting questions regarding the interpretation of the Bond Law, particularly because the Bond Law does not expressly exclude architects and engineers from recovering against a payment bond, does not define the term "labor," and requires a bond in the amount of 100% of the contract. However, our Supreme Court has observed that "[t]he largest single body of law on th[e] subject" of what is covered by payment bonds "is found in federal court

16

decisions interpreting the Miller Act" and then applied an interpretation of the Miller Act to the Bond Law. Walters Tire Serv., Inc., 252 A.2d at 595; see also Jacobs v. Ne. Corp., 206 A.2d 49, 52-54 (Pa. 1965) (applying federal court interpretations of provisions of the Miller Act to "substantially identical" provisions of the Bond Law). Moreover, as noted above, numerous courts have held that the Bond Law, or similar bond laws like the Miller Act, were meant to replace mechanics' lien laws for public contracts and were intended to have the same scope as the mechanics' lien laws. Berks Prods. Corp., 72 A.3d at 322; Valley Forge Indus., Inc., 374 A.2d at 1315; Nicholson Constr. Co., 760 F.2d at 77; Can-Tex Indus., 460 F. Supp. at 1024-25. Widmer's professional engineering work, which common pleas found did not include "physical labor or participat[ion] in onsite activities rising to the level of supervising or superintending," (October 2012 Op. at 6), would not be covered under either the Mechanics' Lien Law or the Miller Act, the latter of which, like the Bond Law, does not define "labor" or expressly exclude architects and engineers from its term.

Additionally, although Widmer asserts that the Miller Act is narrower than the Bond Law, both laws provide protections for "persons" (Miller Act) or "claimants" (Bond Law) "supplying labor or materials" (Bond Law) or "supplying labor and material" (Miller Act) for the public project. 8 P.S. § 193(a)(2); 40 U.S.C. § 3131(b)(2). Moreover, to the extent that Widmer argues that there is no protection under the Miller Act for materials or labor that do not become a part of the project, the Miller Act's protection may extend to items such as materials, like tires, that are "consumed" or that do not constitute capital equipment for the claimant, even though they do not become a part of the project. See Walters Tire Serv., Inc., 252 A.2d at 595 (holding tires that are consumed in the course of

17

construction are included as "material" for purposes of a payment bond, even though they do not become a part of the project, but that capital equipment that can be reused on future work is not covered) (citing United States for Use of Tom P. McDermott, Inc. v. Woods Constr. Co., 224 F.Supp. 406, 409 (N.D. Okla. 1963)); United States for the Use of Sunbelt Pipe Corp. v. United States Fid. and Guar. Co., 785 F.2d 468, 470-71 (4th Cir. 1986) (stating that "the reasonable good faith belief and expectation of the supplier" that the material furnished is to be consumed on the bonded project results in the supplier being protected by the bond, but if the material supplied usually is not consumed then it is considered capital equipment and no protection is available under the bond).

Finally, we address the fact that the Bond here was for 100% of the contract price, which includes the professional engineering services Widmer provided. Both the Bond Law and the Miller Act require, in most instances, a payment bond for the *entire* amount of the contract. 8 P.S. § 193(a)(2); 40 U.S.C. § 3131(b)(2) (Section 3131(b)(2) does allow for the contract officer to permit a lesser amount if the total amount would be "impractical"). We agree it is troubling that, although the Bond was required to be in an amount that would *include* the professional engineering services Widmer provided and for which it was not paid, Widmer would not receive any funds from the Bond. However, this disparity is not determinative. Given the longstanding and consistent interpretations of the term "labor" as excluding the type of professional services Widmer provided to Five-R in this matter, common pleas did not err or abuse its discretion in concluding that Widmer's professional engineering services are not covered under the Bond Law.

*B. Whether common pleas erred in holding that the Bond's language does not require payment to Widmer for its professional engineering services.*

Widmer next argues that common pleas erred in concluding that the language of the Bond itself, which was for 100% of the amount of the PennDOT design/build contract with Five-R ($3,905,583.21), did not require payment to Widmer. It asserts that the "[i]nterpretation of a surety's liability under a bond should be undertaken with the purpose of constructing the intent from all of the words and clauses used and taken as a whole, with due regard to the surrounding circumstances," Downingtown Area School District v. International Fidelity Insurance Co., 671 A.2d 782, 786 (Pa. Cmwlth. 1996) (emphasis omitted), and that the facts and surrounding circumstances here warrant payment to Widmer under the Bond. Widmer contends that the language of the Bond is to be interpreted liberally in favor of the third parties to the bonds. Berks Prods. Corp., 72 A.3d at 319.

Penn National responds that the Bond's language, which provides coverage for an individual or entity that has supplied labor or "has performed labor or furnished material in the prosecution of the work," (R.R. at 23a), is the same language used in Sections 3(a)(2) and 4 of the Bond Law. It further argues that the Bond specifically makes recovery by a claimant subject to the Bond Law, and the fact that the Bond was for 100% of the contract is a statutory requirement and not intended to expand what types of services are covered. Finally, Penn National asserts that Widmer misreads Downingtown Area School District because the language Widmer relies upon relates to *performance bonds* and this Court distinguished those bonds from *payment bonds*, which this Court described as being "extremely narrow." Downingtown Area Sch. Dist., 671 A.2d at 786.

A payment bond may provide greater protections than the Bond Law if the bond language so provides, but "[t]he obligation of a bond cannot be extended beyond the plain import of the words used . . . . Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extend the terms beyond their normal meaning." R.R. Wilmot, Inc. v. American Ins. Co., Inc., 642 A.2d 584, 586 (Pa. Cmwlth. 1994) (internal quotations omitted); see also Redevelopment Auth. of the City of Phila. v. Fid. and Deposit Co. of Maryland, 665 F.2d 470, 472 (3d Cir. 1981) (payment bond's language provided for a longer limitation period than that set forth in the statute). Where the payment bond's language is very similar to that used in the Bond Law, the payment bond should be interpreted in the same way as the Bond Law. Salvino Steel & Iron Works, Inc. v. Fletcher & Sons, Inc., 580 A.2d 853, 856 (Pa. Super. 1990); Lite-Air Prods., Inc., 437 F. Supp. at 803.

The language of the Bond here is very similar to the language used in Sections 3(a)(2) and 4(a) of the Bond Law. The Bond states that:

> . . . PRINCIPAL [Five-R] shall and *will promptly or cause to be paid in full all sums of money which may be due* by contractor or corporation, *for* all materials furnished or *labor supplied or performed in the prosecution of the work,* whether or not the said material or labor entered into or became component parts of the work or improvement contemplated . . . .
>
> The PRINCIPAL and [the] SURETY hereby, jointly and severally, agree with the obligee herein that any individual, firm, partnership, association or corporation, which *has performed labor or furnished material in the prosecution of the work as provided* . . . and which has *not been paid in full therefor[e], may sue [in] assumpsit on this Payment Bond . . . .*

20

(R.R. at 23a (emphasis added).) The italicized language tracks that used in Sections 3(a)(2) and 4(a) of the Bond Law to address what is covered by a payment bond. Section 3(a)(2) of the Bond Law states that the "bond shall be . . . for the protection of claimants supplying labor . . . in the prosecution of the work provided for in such contract" and that there should be prompt payment for "labor supplied or performed in the prosecution of the work." 8 P.S. § 193(a)(2). Section 4(a) of the Bond Law provides that "any claimant who has performed labor or furnished material in the prosecution of the work . . . who has not been paid in full therefor[e] . . . may bring an action on such payment bond . . . in assumpsit . . . ." 8 P.S. § 194(a). Because the language in the Bond is nearly identical as that in the Bond Law, we interpret the Bond's language as we would the Bond Law, which we have held does not cover the professional services Widmer provided here. Moreover, as discussed in our analysis of the application of the Bond Law, the fact that the Bond was for 100% of the contract price is not determinative. The Miller Act also requires, generally, that a 100% payment bond be posted and still excludes from recovery the professional design services of architects and engineers absent some on-site supervision and manual labor.

Because the language in the Bond is nearly identical to the language in the Bond Law, and no broader, Berks Products Corporation does not apply. In Berks Products Corporation, this Court considered whether a surety waived certain protections under the Bond Law and the Procurement Code based on language in the payment bond that was *broader* than that found in either of those laws. Concluding that the surety did waive the statutory protections by agreeing to the broader language, we held that the material supplier in that case could recover against the payment bond. Berks Prod. Corp., 72 A.3d at 322. However, the Bond

21

here does not use broader language and does not provide more protection than that given by the Bond Law. Because the language is nearly identical to the Bond Law, it should be interpreted in the same way. Salvino Steel & Iron Works, Inc., 580 A.2d at 856; Lite-Air Prods., Inc., 437 F. Supp. at 803. Similarly, Widmer's reliance on Downingtown Area School District is misplaced because the bond involved in that case was a *performance* bond issued under Section 3(a)(1) and not a payment bond. Downingtown Area Sch. Dist., 671 A.2d at 785. We distinguished between performance bonds and payment bonds, noting that the latter were based on Section 3(a)(2), which was extremely narrow. Id. at 785-86. Thus, Downingtown Area School District is inapplicable here.

## III.    Conclusion

For the foregoing reasons, common pleas did not err in interpreting the Bond Law and the Bond as not covering the professional engineering services Widmer provided to Five-R. Therefore, we affirm common pleas' denial of the Motion, and dismissing the Amended Complaint against Penn National.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Widmer Engineering, Inc.,                   :
                  Appellant    :
                                  :
               v.    :    No. 257 C.D. 2016
                                  :
Five-R Excavating, Inc. and The           :
Pennsylvania National Mutual             :
Casualty Insurance Company, Inc.     :

## O R D E R

     **NOW**, March 13, 2017, the April 4, 2013 Order of the Court of Common Pleas of Beaver County, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

                                   _____

                                   **RENÉE COHN JUBELIRER,** Judge